**[Cite as *Ellis v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-6877.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William W. Ellis, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-354 |
| v. | : | (Ct. of Cl. No. 2018-00744JD) |
| Ohio Department of Rehabilitation and Correction, | : | (ACCELERATED CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 24, 2020

**On Brief**: *Stephen P. Hanudel*, for appellant. **Argued:** *Stephen P. Hanudel.*

**On Brief:** *Dave Yost*, Attorney General, and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiff-appellant, William W. Ellis, appeals from an adverse judgment of the Court of Claims of Ohio entered on May 30, 2019. The judgment granted the motion for summary judgment of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on Ellis' damages claim for unlawful imprisonment. In light of the Supreme Court of Ohio's recent and sweeping contraction of the definition of what constitutes a void judgment in a criminal case, we find we must make an equally sweeping revision to the caselaw our district developed in response to the Supreme Court's voidness jurisprudence. We therefore revise our views regarding when a judgment appears to be void such that ODRC may be held liable for false imprisonment. Based on that revised view, we affirm the decision of the Court of Claims but with different reasoning.

## I.   FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   Ellis commenced the underlying action seeking to recover damages under a theory of false imprisonment.  (Apr. 27, 2018 Compl. at ¶ 12-14.)  Ellis alleged that ODRC had no authority to impose post-release control on him when he was released from prison on May 17, 2015, a fact that ODRC knew or should have known from viewing the relevant sentencing orders.  *Id.* at ¶ 12.  Consequently, he asserted that ODRC had no authority to confine him for any post-release control violation.  *Id.*  He alleged that ODRC "intentionally confined Plaintiff Ellis for 80 days without privilege and against his consent, directly and proximately causing injury to Ellis' life and liberty."  *Id.* at ¶ 13.  Ellis' complaint states that he suffered loss of liberty, loss of income, and severe mental and emotional distress as a direct and proximate cause of ODRC's actions.  *Id.* at ¶ 14.

{¶ 3}   The facts of the underlying matter are not in significant dispute.  By an entry signed on December 3, 2007, the Cuyahoga County Court of Common Pleas sentenced Ellis to a five-year term of imprisonment in Cuyahoga C.P. No. CR-07-495646-A.  (Dec. 3, 2007 Journal Entry, Ex. B to Mar. 1, 2019 Dong Aff.)  The trial court's entry did not specify or reference the potential penalties for violating post-release control but did include this language:

> (5 YEARS POST RELEASE CONTROL IS MANDATORY)
>
> POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS FOR THE FELONY(S) UNDER R.C. 2967.28

*Id.*  Approximately three months later, on February 28, 2008, the Cuyahoga County Court of Common Pleas sentenced Ellis to a further consecutive three-year term of imprisonment in Cuyahoga C.P. No. CR-07-498821-A.  (Feb. 28, 2008 Journal Entry, Ex. A to Mar. 1, 2019 Dong Aff.)  That entry also did not specify or reference the potential penalties for violating post-release control but did contain this language:

> POST-RELEASE CONTROL IS MANDATORY FOR A 3 YEAR PERIOD
>
> POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 3 YEARS FOR THE FELONY(S) UNDER R.C. 2967.28

*Id.* Ellis was admitted to prison on March 4, 2008, released on May 17, 2015, and placed on post-release control either the same day of his release or the next day. (Mar. 1, 2019 Dong Aff. at ¶ 5[1]; Apr. 27, 2018 Compl. at ¶ 5; Mar. 1, 2019 Am. Answer at ¶ 5; Mar. 19, 2019 Entry Granting Leave to Amend.)

{¶ 4} On June 16, 2016, Ellis was incarcerated again based on a hold order issued by the Adult Parole Authority for an alleged violation of post-release control. (Mar. 1, 2019 Dong Aff. at ¶ 6; June 16, 2016 Order of Hold, Ex. C to Mar. 1, 2019 Dong Aff.) Ultimately, as a result of a post-release control violation hearing conducted on August 1, 2016, Ellis was ordered to serve 30 days in jail. (Mar. 1, 2019 Dong Aff. at ¶ 7; Prison Term Order, Ex. D. to Mar. 1, 2019 Dong Aff.) However, in total, Ellis was held in custody from the date of the hold order until he was released at the expiration of the 30-day sentence on August 31, 2016. (Mar. 1, 2019 Dong Aff. at ¶ 6-7.)

{¶ 5} On July 18, 2016, while still in custody on the hold order, Ellis filed motions in the Cuyahoga County Court of Common Pleas seeking to terminate post-release control for his two cases. *State v. Ellis*, 8th Dist. No. 105108, 2017-Ohio-7606, ¶ 5. On October 18, 2016, more than two weeks after Ellis was released from confinement, the common pleas court denied Ellis' motions. *Id.* Ellis filed a consolidated appeal as to both cases, asserting in his single assignment of error that the common pleas court had incorrectly denied his motion to terminate post-release control. *Id.* at ¶ 6.

{¶ 6} In a decision issued more than one year after Ellis was released from confinement, the Eighth District Court of Appeals noted the requirement that a sentencing entry must include a statement to the effect that any violation by the offender of the conditions of post-release control would subject the offender to the consequences set forth in R.C. 2967.28. *Ellis*, 2017-Ohio-7606, at ¶ 7-18. The Eighth District accepted a concession from the State that the trial court erred by imposing post-release control without including such a statement in its entry. *Id.* at ¶ 18. Interpreting the Supreme Court caselaw on voidness that existed in September 2017 when the Eighth District decided *Ellis*, the appellate court concluded that this omission rendered the imposition of post-release control void. *Id.* at ¶ 7-8, 18-19. Because Ellis had already been released from his original

---

[1] The affidavit of John Dong contains two paragraphs numbered "5." This refers to the second.

prison term, the Eighth District concluded that the trial court lacked jurisdiction to correct the defective imposition of post-release control and ordered that Ellis be terminated from further post-release control in the consolidated cases. *Id.* in passim.

{¶ 7} On November 14, 2017, the common pleas court issued an entry terminating Ellis' post-release control. (Mar. 1, 2019 Dong Aff. at ¶ 9; Nov. 14, 2017 Journal Entry, Ex. F to Mar. 1, 2019 Dong Aff.)

{¶ 8} On April 27, 2018, Ellis brought suit for false imprisonment in the Court of Claims stemming from the confinement he experienced in 2016 as a result of post-release control violations. (Apr. 27, 2018 Compl.) On March 1, 2019, ODRC filed a motion for summary judgment, arguing that Ellis' claim was barred by the one-year statute of limitations set forth in R.C. 2305.11(A) or, alternatively, because Ellis was incarcerated at all times pursuant to facially valid sentencing entries. (Mar. 1, 2019 Mot. for Summ. Jgmt. at 4-5.) On May 6, 2019, the Court of Claims granted ODRC's motion for summary judgment, holding that Ellis' claim was untimely and, even if it had been timely, Ellis failed to show that his sentencing entries were facially invalid. (May 6, 2019 Jgmt. Entry at 2-6.)

{¶ 9} Ellis appeals to this Court from the decision of the Court of Claims.

## II. ASSIGNMENT OF ERROR

{¶ 10} Ellis presents for our review a single assignment of error:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY
> JUDGMENT.

## III.  LAW AND DISCUSSION

### A.  Summary Judgment Standard of Review

{¶ 11} Ohio Rule of Civil Procedure 56 provides that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56(C). The Supreme Court has explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is

> entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; *see also*, *e.g.*, *Esber Bev. Co. v. Labatt United States Operating Co., L.L.C.*, 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 12} In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd*, 2006-Ohio-3455, at ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo and we, therefore, apply the same standards as the trial court. *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

**B. Whether the Court of Claims Erred in Determining that the Summary Judgment Record Showed that ODRC was Entitled to Judgment as a Matter of Law**

{¶ 13} The Supreme Court has held that false imprisonment is intentionally confining a person " 'without lawful privilege and against [the person's] consent within a limited area for any appreciable time, however short.' " *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71 (1977), quoting 1 Harper and James, The Law of Torts, Section 3.7, at 226 (1956). ODRC, by virtue of its purpose and function, intentionally imprisons many persons without their consent when ordered to do so by the justice system. Thus, suits for false imprisonment against the ODRC often turn on the question of whether ODRC had a "lawful privilege" to imprison the plaintiff. In fact, in this case, the Court of Claims found that a false imprisonment tort had not occurred because Ellis was confined pursuant to facially valid sentencing entries—in other words, that ODRC had a "lawful privilege" to imprison Ellis. (May 6, 2019 Jgmt. Entry at 4-6.)

{¶ 14} The Supreme Court has articulated the issue of "lawful privilege" when applied to the Ohio prison system in false imprisonment cases according to this maxim: " 'an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court, unless it appear that such judgment or order is void.' " *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 111 (1991), quoting *Diehl v. Friester*, 37 Ohio St. 473, 475 (1882). Generally, in Ohio,

an order or judgment of a court has only been considered "void" when the court lacked jurisdiction over the person or the subject matter of the action; lesser defects would merely render an entry "erroneous" and "voidable." *See*, *e.g.*, *State v. Henderson*, __ Ohio St.3d __, 2020-Ohio-4784, ¶ 16-19; *State v. Harper*, __ Ohio St.3d __, 2020-Ohio-2913, ¶ 21-23; *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, ¶ 12; *State v. Perry*, 10 Ohio St.2d 175, 178 (1967); *Ex parte Shaw*, 7 Ohio St. 81, 82 (1857).

{¶ 15} However, for a period of years the Supreme Court deviated from that long-standing principle as to defects in criminal sentencing. In a line of cases beginning with *State v. Beasley*, 14 Ohio St.3d 74, 75 (1984), and accelerating after the 2004 decision in *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, the Supreme Court held sentencing entries to be void (rather than merely erroneous or voidable) in whole or in part where a defect in the way the court imposed sentence rendered the sentence unlawful. *See Henderson*, 2020-Ohio-4784, at ¶ 16-38 (giving a history of the High Court's deviation from the traditional definition of voidness). That era has now ended. *See Harper*, 2020-Ohio-2913, at ¶ 40; *Henderson*, 2020-Ohio-4784, at ¶ 34. However, during some of that period of time, defects in how post-release control was imposed also were thought to render a sentencing entry void or partially void. *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 1; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18; *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, paragraphs one and two of the syllabus; *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, paragraph one of the syllabus; *Jordan*, 2004-Ohio-6085, at ¶ 6, 17, 23, paragraph one of the syllabus. And in cases where the defendant had completed his or her original prison term before the erroneous imposition of post-release control was characterized as void, some courts in their decisions concluded that it was then jurisdictionally impossible for the trial court to correct the entry and properly impose post-release control. *Qualls*, 2012-Ohio-1111, at ¶ 16, citing *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, ¶ 28-30. In such cases, there was thought to be no other remedy but to discharge the defendant from any sentence of post-release control and confinement resulting from violation of its terms, not having been validly imposed in the first instance. *Qualls*, 2012-Ohio-1111, at ¶ 16, citing *Kelly*, 2006-Ohio-126, at ¶ 28-30; *but cf. Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, ¶ 48-53. This is the circumstance of Ellis' case. *Ellis*, 2017-Ohio-7606, at ¶ 7-18.

{¶ 16} When voidness could be determined by assessing whether a trial court had jurisdiction over the defendant and the criminal subject matter, determining whether a prisoner was confined according to a valid or void judgment or order of a court was a relatively straightforward analysis. *See Bennett*, 60 Ohio St.3d at 111, quoting *Diehl*, 37 Ohio St. at 475. If, for example, an order to imprison a person issued from the wrong court or (as was true in *Bennett*) concerned a time period that had already expired, voidness was immediately apparent. *See Bennett*, 60 Ohio St.3d at 108. But one of the consequences of the Supreme Court's later deviation from the generally accepted definition of a "void" judgment was that it produced "seemingly endless litigation" and a commensurately endless supply of caselaw about which sentencing errors rendered a judgment void or partially void. *Harper*, 2020-Ohio-2913, at ¶ 34; *Henderson*, 2020-Ohio-4784, at ¶ 16-38. This added complexity to what had been a simple question of whether a judgment was void, and claims of false imprisonment became plausibly available to persons who were not falsely imprisoned in the traditional sense, but could nonetheless show that their judgment was "void" because it was defective in some way.

{¶ 17} For example, in this case, Ellis has never claimed that the court lacked jurisdiction over the criminal case or him, nor that ODRC kept him beyond the term he was ordered to serve. (Apr. 27, 2018 Compl. in passim.) He does not argue that he was not notified that he would be on post-release control, or that the trial court did not actually order him to be placed on post-release control, or that he did not violate post-release control. *Id.* Ellis' argument for why he was falsely imprisoned is that the trial court failed to include a notification in its judgment entries about what would happen if Ellis violated post-release control.

{¶ 18} In 2017, over one year after his release from confinement, the Eighth District found the imposition of post-release control to be void on this basis. (Apr. 27, 2018 Compl. at ¶ 9.) *Ellis*, 2017-Ohio-7606, at ¶ 7-8, 18-19. Ellis' judgment entries were signed in 2007 and 2008. (Dec. 3, 2007 Journal Entry, Ex. B to Mar. 1, 2019 Dong Aff.; Feb. 28, 2008 Journal Entry, Ex. A to Mar. 1, 2019 Dong Aff.) At that time, R.C. 2929.19(B)(3)(e) and 2929.191(B)(1) implied that an entry should include a "statement to th[e] effect" that the trial court had notified the offender of the consequences of violating post-release control. But in 2007 and 2008, neither the Eighth District nor the Supreme Court had yet explicitly

held that the consequences of violating post-release control should be set forth in the entry or that a failure to include such material might render a judgment void. *State v. Dedonno*, 8th Dist. No. 94732, 2010-Ohio-6361, ¶ 12 (noting that "no court has held the failure to state in the journal entry the consequences of violating postrelease control results in a void sentence"). Not until 2017 was that uniformly established statewide[2] by *Grimes*, 2017-Ohio-2927, at ¶ 1. In other words, at the time the entries were issued, it would not likely have "appear[ed]" to anyone (including ODRC) that Ellis' judgment entries were "void." Moreover, even once the law evolved to the point that the omission could have been considered a voiding error, the error was not in fact detected until 2017, after all Ellis' terms of confinement had ended. (Mar. 1, 2019 Dong Aff. at ¶ 6-7.) *Ellis*, 2017-Ohio-7606, at ¶ 7-18. Thus, Ellis' claim essentially seeks a conclusion that terms of imprisonment, served in accordance with judgments that had not been found to be void and that were not void under the law applicable at the time they were issued, nonetheless retroactively became false imprisonment when the judgment entries were later, under newly developed caselaw, found to be void in part.

{¶ 19} Rather than hold ODRC liable in cases where, as here, a judgment confining a person later became "void" because some part of it was later considered to be erroneous, this District began to issue cases construing when a judgment or order "appeared" to be "void" in the context of false imprisonment. *Bennett*, 60 Ohio St.3d at 111, quoting *Diehl*, 37 Ohio St. at 475. While there are some cases in which we confronted genuine questions about whether the trial court had jurisdiction to issue the judgment in question,[3] as the Supreme Court's body of caselaw expanding voidness increased, so too did our interpretations limiting its effect on false imprisonment actions.

---

[2] Though some panels of the Eighth District adopted that position as early as 2011. *State v. Viccaro*, 8th Dist. No. 99816, 2013-Ohio-3437, ¶ 10-14; *State v. Rice*, 8th Dist. No. 95100, 2011-Ohio-1929, ¶ 8-9; *State v. Nicholson*, 8th Dist. No. 95327, 2011-Ohio-14, ¶ 9-10, 13.

[3] *Fryerson v. Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-1216, 2003-Ohio-2730 (declining to permit a false imprisonment claim to proceed because, despite improperly proceeding on some charges that should have been the subject of a discretionary bindover, the trial court was not entirely without jurisdiction over the defendant or the subject matter where the defendant was validly bound over with respect to certain mandatory bindover charges); *Larkins v. Dept. of Rehab. & Corr.*, 10th Dist. No. 98AP-711, 1999 WL 174053, 1999 Ohio App. LEXIS 1247 (Mar. 18, 1999) (declining to allow a false imprisonment claim to proceed despite an allegation that the trial court lacked jurisdiction to convict following a bench trial because a waiver of jury was improperly filed).

{¶ 20} In 2007, in *Bradley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-506, 2007-Ohio-7150, a prisoner sued ODRC for false imprisonment, based on a determination of the Second District Court of Appeals, following the Supreme Court's new expansion of voidness in *Jordan*, 2004-Ohio-6085. In *Jordan*, the High Court determined that the "trial court 'lacked the authority to impose any prison sentence as a sanction for Bradley's community control violation * * *' because it never informed him of the specific sentence he would face for a community control violation as required by R.C. 2929.19(B)(5)." *Bradley*, 2007-Ohio-7150, at ¶ 3, quoting *State v. Bradley*, 151 Ohio App.3d 341, 2003-Ohio-216, ¶ 14 (2d Dist.). In denying *Bradley* relief, we blunted the effect of the Second District's determination of voidness and expanded the application of the test of whether a judgment "appear[s]" to be void with the caselaw declaration that ODRC enjoys "common law immunity for claims of false imprisonment when the plaintiff was incarcerated pursuant to a facially valid judgment or order[,] * * * even though the facially valid judgment or order was later determined to be void." *Bradley*, 2007-Ohio-7150, at ¶ 11; *cf. Bennett*, 60 Ohio St.3d at 111. In other words, before *Bradley*, over 100 years of Supreme Court jurisprudence told us simply that " 'an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court, unless it appear that such judgment or order is void.' " *Bennett*, 60 Ohio St.3d at 111, quoting *Diehl*, 37 Ohio St. at 475. But after the Supreme Court ushered in a new era in which an entry, valid-seeming on its face, might nonetheless be rendered void by some relatively minor omission in sentencing, *Bradley* became a counterweight, such that, while an order might actually be void under the evolving caselaw, as long as it was "facially valid," ODRC would not face liability. *Bradley*, 2007-Ohio-7150, at ¶ 3, 11.

{¶ 21} In 2009, an inmate sought to claim that caselaw relating to the sentencing package doctrine and the failure to impose post-release control properly as to each separate offense, rendered his judgment entry "void" and thereby justified a claim of false imprisonment. *Gonzales v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-567, 2009-Ohio-246, ¶ 9. We blanketed that argument with *Bradley*, noting that these allegations did "not challenge the facial validity of the sentencing entry" and consequently that there was

nothing to "demonstrate [ODRC's] knowledge that it lacked lawful privilege to confine appellant." *Id.* at ¶ 10.

{¶ **22**} Over time, the observation in *Gonzales* morphed into the notion that "[f]acial invalidity does not require the consideration of extrinsic information or the application of case law." *Beachum v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-635, 2012-Ohio-673, ¶ 7; *see also Fisk v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-432, 2011-Ohio-5889, ¶ 14. In *Beachum*, the plaintiff sought to claim that he was falsely imprisoned because the judgment entries against him were partially void as a consequence of the trial court having imperfectly imposed post-release control (even though the entries were corrected nunc pro tunc). *Beachum*, 2012-Ohio-673, at ¶ 2, fn. 1. The facts of *Fisk* were similar to *Beachum*; the plaintiff-inmate in that case was imprisoned as a result of a post-release control violation but the original imposition of post-release control was found be defective and therefore void. *Fisk*, 2011-Ohio-5889, at ¶ 4-5. Thus *Beachum* and *Fisk*, like these other examples, were instances of plaintiffs bringing a false imprisonment action not because they were imprisoned unjustly, but because they were imprisoned on orders that were technically flawed and, due to the emerging Supreme Court expansion of voidness, the technical flaws rendered the entries partially void.

{¶ **23**} In a recent case, a plaintiff sought to recover for false imprisonment after a court vacated a portion of his post-release control term, finding that it had not been properly imposed and was therefore "void." *Green v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-356, 2020-Ohio-1011, ¶ 4.[4] Because the Adult Parole Authority did not become aware of the "void" finding until several months later, the plaintiff remained confined for a time despite the voidness finding. *Id.* at ¶ 5. We reiterated our prior holdings that facial invalidity requires that a defect be apparent on the face of the judgment, without reference to extrinsic evidence or caselaw to identify or explain the problem with the judgment. *Id.* at ¶ 12. We also concluded that, because ODRC did not have actual knowledge that the facially valid entries had been found to be void based on the defective way post-release control had been imposed, ODRC could not be found liable for having intentionally confined the plaintiff without the privilege to do so. *Id.* at ¶ 13-15. Thus,

---

[4] Another case, *Barb v. Ohio Dept. of Rehab. & Corr.*, issued the same day as *Green*, is to similar effect. *Barb v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-395, 2020-Ohio-1012, ¶ 2-3, 8-9.

*unawareness* of the sentencing entry defect under expanded voidness jurisprudence that rendered the entry void further insulated ODRC from liability for false imprisonment.

{¶ 24} Taken together, these cases illustrate this Court's struggle in reviewing Court of Claims' decisions to reconcile the truth of what a false imprisonment is—intentional confinement without privilege—with the dubious conclusion necessitated by the Supreme Court's voidness expansion in cases where an otherwise fully just confinement becomes retroactively void (or without privilege) due to errors (often minor ones) in sentencing. In other words, our cases evolved out of an attempt to impose a reasonable limit on what it meant for a judgment or order to "appear" to be "void" in an evolving legal environment where virtually any error in sentencing could render a judgment void at any time. Our jurisprudence made sense in that environment. Even this author has employed the facial invalidity standard. *See Mavroudis v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-430, 2017-Ohio-8649, ¶ 9-11 (explaining that "ODRC is not a court and is not to be held liable for failing to divine from the procedural history of an inmate's case that what appears to be a facially valid order has defective roots that affect whether it should continue to hold a prisoner. ODRC cannot and should not second-guess facially valid orders from the judiciary."). All of that has changed as of October 2020, with the Supreme Court having definitively ended the voidness expansion era and dammed the "slippery slope" it created. *Henderson*, 2020-Ohio-4784, at ¶ 24-25, 34. We observe that with the genesis of our District's jurisprudence in this pointed area of the law ending, so too has its reason for being.

{¶ 25} As Justice Kennedy put it when snuffing out the flame of unchecked voidness expansion:

> We do not reach today's decision lightly. We acknowledge that the doctrine of stare decisis dictates adherence to prior judicial decisions. "*Stare decisis*, however, was not intended 'to effect a "petrifying rigidity," but to assure the justice that flows from certainty and stability. If, instead, adherence to precedent offers not justice but unfairness, not certainty but doubt and confusion, it loses its right to survive, and no principle constrains us to follow it.' " *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 1994- Ohio 519, 628 N.E.2d 46 (1994), quoting *Bing v. Thunig*, 2 N.Y.2d 656, 667, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957).

*Harper*, 2020-Ohio-2913, at ¶ 38.   In this same spirit, we henceforth realign our understanding with that given to us by the Supreme Court before the era of voidness overgrowth.   A false imprisonment action in which the imprisonment was in accordance with a court order or judgment can only be maintained if "it appear[s] that such judgment or order is void."  *Bennett*, 60 Ohio St.3d at 111.  And an order is void if the trial court lacked jurisdiction over the case or the person, or if, having been merely voidable when issued, the judgment was duly challenged and voided.  *Henderson*, 2020-Ohio-4784, at ¶ 34.

{¶ 26}  In this revived era of classic voidness, what then are ODRC's responsibilities?  ODRC has legal representation through the Ohio Attorney General's office on matters of sentence computation and post-release control.[5]  That office also provides, as is evident by their appearance in this very case, Court of Claims representation.  Consequently, with the restoration of limited voidness jurisprudence (that an order is only void if it was rendered without jurisdiction or if it was voidable, duly challenged, and found to be void), we see no limitations in the law that ODRC must decline to imprison people based on void orders and is subject to liability in the event that ODRC does imprison a person based on a void order.  No private criminal or tortfeasor is excused from liability due to a lack of knowledge of the law, and we discern no reason why a state agency like ODRC, with full access to an entire office of attorneys to advise it, should be continued to be afforded a defense whose very existence has been swept away by the direct and terminating language of *Harper*.  *See also State v. Pinkney*, 36 Ohio St.3d 190, 198 (1988); *State v. Thompson*, 10th Dist. No. 16AP-812, 2017-Ohio-8375, ¶ 27; *Sain v. Roo*, 10th Dist. No. 01AP-360, 2001 Ohio App. LEXIS 4740, *24-25 (Oct. 23, 2001).

{¶ 27}  Not to plainly state the effect of *Harper* hazards an irresponsible ignorance in our jurisprudence that mass incarceration has in part resulted from " 'petrifying rigidity,' * * * unfairness, * * * doubt and confusion."  *Harper*, 2020-Ohio-2913, at ¶ 38.  Courts are beginning to understand issues related to mass incarceration, defined by one court as:

> [A] term used by historians and sociologists to describe the substantial increase in the number of incarcerated people in United States' prisons over the past forty years. The US's prison

---

[5] State law creates an Adult Parole Authority in ODRC's division of parole and community services. R.C. 5149.02.  The attorney general is the exclusive legal adviser of the Adult Parole Authority, its officers, and employees.  R.C. 5149.08.

> population dwarfs the prison populations of every other developed country in the world, including countries thought to be repressive like China and Russia.
>
> * * *
>
> [M]ass incarceration began in the 1960s and 1970s with a rise in 'tough-on-crime' approaches to criminal justice and with <u>deliberate policy choices that impose intentionally punitive sentences. This approach has increased </u>both the numbers of people entering the criminal justice system and <u>how long they remain under correctional control</u>.

(Emphasis added.) *Matter of Kellogg v. New York State Bd. of Parole*, 2017 NY Slip Opinion 30537(U), 2017 N.Y. Misc. LEXIS 968, *18. Moreover, mass incarceration has been shown to result in disparate treatment of racial minorities. "African Americans are incarcerated in state prisons across the country at more than five times the rate of whites, and at least ten times the rate in five states," according to sentencingproject.org's report, *The Color of Justice: Racial and Ethnic Disparity in State Prisons*, published June 14, 2016 by Ashley Nellis, Ph.D. *See* https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnic-disparity-in-state-prisons/ (accessed Dec. 21, 2020). *See also* Michelle Alexander, THE NEW JIM CROW: MASS INCARCERATION IN THE AGE OF COLORBLINDNESS (2010).

{¶ 28} In Ohio, the Eighth District has officially recognized that eliminating mass incarceration is a goal of Ohio sentencing law reforms adopted in 2018:

> There are now three overriding purposes set forth in R.C. 2929.11(A). *See* S.B. 66, Section 1, effective October 29, 2018. The third overriding principle is "to promote the effective rehabilitation of the offender." Taylor was sentenced prior to the amendment's effective date. Moving forward, the trial court will be required to carefully consider and give equal weight to the new sentencing purpose of promoting "effective rehabilitation." It is evident that S.B. 66 was formulated in an effort to reduce mass incarceration by rehabilitating individuals, expanding prison alternative programs, and reducing aggregate prison terms. The amendment to R.C. 2929.11 is not inconsequential, and sentences should start reflecting the legislature's comprehensive goals.

*State v. Taylor*, 8th Dist. No. 107881, 2019-Ohio-3367, ¶ 12, fn. 1. In keeping with the sentiment expressed by the Eighth District and the Ohio General Assembly concerning the

enactment of Ohio S.B. No. 66, not only should criminal sentences reflect the legislature's comprehensive goals, they should comply with its legislative enactments. Relieving the ODRC from liability in cases where the ODRC has held persons beyond the time permitted by court order or where the order is void, and now readily determinedly so post-*Harper*, would frustrate and devalue these expressions of purpose.

{¶ 29} A false imprisonment action against ODRC may be maintained where the imprisonment was not according to the terms of a court order or judgment or where it was according to the terms of a court order or judgment but "it appear[s] that such judgment or order is void." *Bennett*, 60 Ohio St.3d at 111. An order or judgment is void if the trial court lacked jurisdiction over the case or the person, or if, having been merely voidable when issued, the judgment was duly challenged and voided. *Henderson*, 2020-Ohio-4784, at ¶ 34. It is ODRC's responsibility to use its considerable legal resources to ensure that when it confines a person, it does so according to the terms of the judgment or order (and not, for example, beyond the stated term of the order), that the order is not void ab initio (due to a want of jurisdiction over the person or action), and that the order has not been found to be void.

{¶ 30} Applying our restored understanding of the law of voidness to this case, the portion of Ellis' judgments placing him on community control were defective because they failed to set forth the consequences of violating community control. *Ellis*, 2017-Ohio-7606, at ¶ 7-18; *Grimes*, 2017-Ohio-2927, at ¶ 1. Judged by the law when the judgment entries issued in 2007 and 2008, they were not void. *Dedonno*, 2010-Ohio-6361, at ¶ 12. Judged by the law as it stands today, they would not be void—merely voidable in a direct appeal. *Harper*, 2020-Ohio-2913, in passim.

{¶ 31} The fact remains, however, that in 2017 the Eighth District, acting under the then-proper caselaw and with a concession of error from the State, held those judgments to be void and ordered Ellis' released from community control. *Ellis*, 2017-Ohio-7606, at ¶ 7-8,18-19. Yet, it also is undisputed that Ellis was released from confinement well over one year before the voidable judgments were determined to be void. (Mar. 1, 2019 Dong Aff. at ¶ 6-7.) Hence, even applying our current conception of the law, Ellis was never confined based on a judgment that was either void ab initio or that had been found to be void. At most, he was confined according to a judgment that was partially erroneous and voidable.

And there is no allegation that his confinement exceeded the stated terms of the judgments or was not in accordance with any judgment. Consequently, the undisputed facts of this case show that Ellis has no valid false imprisonment cause of action.

### C. Whether the Court of Claims Erred in Determining that Ellis' Action was Filed Beyond the Statute of Limitations—Moot

{¶ 32} The Court of Claims also determined that Ellis' cause of action was time-barred. (May 6, 2019 Jgmt. Entry at 2-3.) R.C. 2743.16(A) provides that, "[s]ubject to division (B) of this section, civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." R.C. 2305.11(A) provides that "[a]n action for * * * false imprisonment * * * shall be commenced within one year after the cause of action accrued."

{¶ 33} The parties do not dispute that R.C. 2305.11(A) provides a one-year statute of limitations period for false imprisonment actions. The parties do not agree, however, on *when* Ellis' false imprisonment claim in this case accrued and triggered the statute of limitations. However, in light of our discussion above, it is clear that Ellis' cause of action never accrued because he essentially never had a cause of action. That is, during every term of imprisonment he was confined according to judgments that were issued by courts with jurisdiction, and at no time during his confinement had any of those judgments been determined to be void. When the voidness determination occurred, Ellis had already been released. Accordingly, the question of whether Ellis' nonexistent claim for false imprisonment is barred by the statute of limitations is moot. We overrule Ellis' sole assignment of error for the reasons expressed above.

## IV. CONCLUSION

{¶ 34} In our de novo review of the record, we find no disputes of genuine issues of material fact and therefore affirm the trial court's decision to grant summary judgment against Ellis and in favor of ODRC. However, we differ with the trial court as to the appropriate analysis. In light of the Supreme Court's recent decision in *Harper* to end the era of expansive voidness, we find it appropriate to also end the line of cases we developed in tandem with the Supreme Court's expansion of voidness. Specifically, we no longer consider "facial validity" without reference to caselaw to be the dispositive issue.

{¶ 35} Our revised understanding is that a false imprisonment action against ODRC may be maintained where the imprisonment was not according to the terms of a court order or judgment *or* where it was according to the terms of a court order or judgment but it appears that such judgment or order is void, according to this analysis:  an order is void if the trial court lacked jurisdiction over the case or the person, or if, having been merely voidable when issued, the judgment was duly challenged and voided.  It is, therefore, ODRC's responsibility to ensure that when it confines a person, it does so according to the terms of the judgment or order, that the order is not void ab initio (due to a want of jurisdiction over the person or action), and has not been found to be void.

{¶ 36} As we have clearly stated, Ellis' false imprisonment action cannot, on the undisputed facts of this case, succeed.  It is therefore a moot question whether the action was timely brought.

{¶ 37} We thus overrule Ellis' sole assignment of error and affirm the judgment of the Court of Claims of Ohio but for differing reasons as expressed in this decision.

*Judgment affirmed but on differing reasons.*

BROWN and BEATTY BLUNT, JJ., concur in judgment only.

———————————