[Cite as *State v. Edwards*, 2022-Ohio-3408.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200101 |
| | | TRIAL NO.  B-1903327 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| JAMES EDWARDS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 28, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, *Paula Adams*, Assistant Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant James Edwards appeals the judgment of the Hamilton County Court of Common Pleas sentencing him to an indefinite sentence after he pled guilty to burglary, having weapons while under disability, and theft. In his sole assignment of error, Edwards argues that the trial court erred as a matter of law in sentencing him pursuant to the indefinite-sentencing scheme established under 2018 Am.Sub.S.B. 201, identified under R.C. 2901.011 as the Reagan Tokes Law, because the law is facially unconstitutional under the Ohio and United States Constitutions. Edwards challenges the constitutionality of the Reagan Tokes Law as violative of the separation-of-powers doctrine, his substantive- and procedural-due-process rights, and his right to equal protection of the law.

{¶2} Because we recently held that the indefinite-sentencing scheme set forth in the Reagan Tokes Law is facially constitutional, *see State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, ¶ 69, we overrule the assignment of error and affirm the trial court's judgment.

### I. Facts and Procedure

{¶3} In June 2019, a grand jury returned a five-count indictment against Edwards, charging (1) burglary, in violation of R.C. 2911.12(A)(2), a second-degree felony; (2) theft, in violation of R.C. 2913.02(A)(1), a third-degree felony; (3) having weapons while under disability ("WUD"), in violation of R.C. 2923.13(A)(2), a third-degree felony; (4) theft, in violation of 2913.02(A)(1), a fourth-degree felony; and (5) forgery, in violation of R.C. 2913.31(A)(3), a fifth-degree felony. Edwards pled guilty to the burglary, WUD, and fourth-degree theft counts in exchange for dismissal of the third-degree theft and forgery counts.

2

{**¶4**}    The Reagan Tokes Law restored indefinite sentencing in Ohio for non-life-sentence felony offenses of the first or second degree committed on or after March 22, 2019. *Guyton* at ¶ 11, citing *State v. Maddox*, Slip Opinion No. 2022-Ohio-764, ¶ 4, and *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 1 (8th Dist.). Pursuant to the Reagan Tokes Law, the trial court sentenced Edwards to an indefinite term of incarceration of four to six years on the burglary count. Additionally, the trial court sentenced Edwards to a consecutive two-year term for the WUD count and a concurrent 18-month term on the theft count. Edwards timely appealed.

{**¶5**}    In his assignment of error, Edwards challenges the constitutionality of the Reagan Tokes Law. Edwards argues first that the Reagan Tokes Law impermissibly delegates judicial power to the executive branch in a violation of the separation-of-powers doctrine by permitting the Ohio Department of Rehabilitation and Correction ("ODRC") to extend an inmate's term of incarceration beyond the sentence imposed by the sentencing court. Second, Edwards argues that the Reagan Tokes Law violates his right to substantive due process by depriving him of a fundamental liberty interest, the right to be free from illegal bodily restraint, without due process when the ODRC extends an inmate's sentence. Edwards argues next that the Reagan Tokes law violates his right to procedural due process by failing to provide notice to the inmate and a meaningful and appropriate hearing before imposing an extended term of incarceration. Finally, Edwards contends that the Reagan Tokes Law violates his right to equal protection of the laws by permitting the state to treat inmates convicted of first- or second-degree felonies differently from those convicted of third-, fourth-, or fifth-degree felonies.

## II. The Reagan Tokes Law

{¶6}     The indefinite terms established under the Reagan Tokes Law consist of a minimum term set by the sentencing court based on the statutory range, *see* R.C. 2929.14(A)(1)(a), and a maximum term computed by formulas provided in R.C. 2929.144. The maximum term is generally an additional 50 percent added to the minimum term. *See* R.C. 2929.144; *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, at ¶ 12.

{¶7}     Under the Reagan Tokes Law, an offender is presumed to be released at the end of the minimum term. R.C. 2967.271(B). However, ODRC may rebut that presumption by holding a hearing and finding that one or more statutory factors applies. R.C. 2967.271(C). These factors generally require that the offender committed rule infractions that involved compromising the security of the correctional institution or the offender jeopardized the safety of others while incarcerated. *See* R.C. 2967.271(C)(1)-(3). If ODRC finds the presence of these factors after a hearing, the offender may continue to be held up to the maximum term imposed by the trial court. R.C. 2967.271(D)(1). In any event, the offender shall be released at the expiration of the maximum term imposed by the trial court. R.C. 2967.271(D)(2).

## III. Ripeness

{¶8}     This appeal was stayed pending the Ohio Supreme Court's decision in *State v. Maddox*. In *Maddox*, the Ohio Supreme Court held that a facial challenge to the Reagan Tokes Law is ripe for review on direct appeal of a defendant's conviction and prison sentence. *See Maddox*, Slip Opinion No. 2022-Ohio-764, at ¶ 11 and 21; *Guyton* at ¶ 10. Thus, Edwards's challenge is ripe for review, even though he may later bring an as-applied challenge to the law based on future factual development.

4

### IV. The Reagan Tokes Law is Facially Constitutional

{¶9} Edwards challenges the constitutionality of the Reagan Tokes Law based on the separation-of-powers doctrine, substantive and procedural due process, and equal-protection principles. As we recently held in *Guyton*, the statute is facially constitutional on these bases. We address each in turn.

### A.        Separation of Powers

{¶10} Edwards argues that the Reagan Tokes Law is facially unconstitutional because it violates the separation-of-powers doctrine. Edwards urges this court to follow *State ex rel. Bray v. Russel*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), which struck down Ohio's prior "bad-time" statute, the former R.C. 2967.11. Under the "bad-time" statute, the Ohio Parole Board, an executive branch agency, was permitted to extend the sentence of an offender based on the offender's conduct while incarcerated. Because the "bad-time" statute permitted the Ohio Parole Board to increase the offender's sentence without involvement from the judicial branch, the Ohio Supreme Court held the statute invalid as a violation of the separation-of-powers doctrine. *Bray* at 136.

{¶11} We recently decided this issue in *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, at ¶ 28. Unlike the prior "bad-time" statute, which allowed the parole board to extend the offender's judicially-imposed sentence unilaterally, *id.* at ¶ 25, the Reagan Tokes Law creates an "indefinite sentencing structure [that] requires the trial court to impose both a minimum and maximum prison term at sentencing and include that sentence in the final judgment of conviction." *Id.* at ¶ 23. Under this structure, the trial court, not ODRC, imposes the maximum sentence. *Id.*; *State v. Eaton*, 6th Dist. Lucas No. L-21-1121,

2022-Ohio-2432, ¶ 59. As in other parole and postrelease-control schemes, the authority of the executive branch is only to determine which portion of the offender's sentence, up to the judicially-imposed maximum, is actually served. *Eaton* at ¶ 59. On this basis, we held in *Guyton* that the Reagan Tokes Law does not violate the separation-of-powers doctrine. *Guyton* at ¶ 28.

### B. Substantive Due Process

**{¶12}** Edwards next argues that the Reagan Tokes Law deprives him of his right to substantive due process, which protects a person's fundamental liberty interest in freedom from illegal bodily restraint. Edwards contends that the Reagan Tokes Law permits ODRC to detain an offender beyond the term of the judicially-imposed sentence, thereby depriving the offender of a protected liberty interest without the required safeguards provided at trial.

**{¶13}** As we previously held in *Guyton*, this argument misconstrues the nature of the indefinite-sentencing scheme under the Reagan Tokes Law. *Guyton* at ¶ 34. It is the trial court, not the ODRC, that establishes the range of time during which the offender is subject to incarceration. *Id.* The ODRC has no authority under the Reagan Tokes Law to extend the offender's term beyond the maximum end of the range imposed by the sentencing court. *Id.* The Reagan Tokes Law does not offend substantive due process on this basis.

### C. Procedural Due Process

**{¶14}** Edwards next argues that the Reagan Tokes Law violates the constitutional guarantee of procedural due process. Core to the requirements of procedural due process are notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Edwards points out

that the statutory text fails to provide parameters of or a procedure for the hearing required under R.C. 2967.271(C) and (D). Similarly, although R.C. 2967.271(E) directs notice to be provided to a litany of adverse parties, no similar provision is made for notice to the offender. On this basis, Edwards contends that the statute is unconstitutional on its face.

{¶15} In a due-process analysis, we must first determine whether a protected liberty interest exists, and if so, we then consider what process is due. *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 59, citing *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Generally, there is no protected interest in an early release from confinement following a valid criminal conviction. *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, at ¶ 39. However, the presumption created under the Reagan Tokes Law that an offender will be released following the minimum term of incarceration "create[s] a right to early release for the prisoners unless the ODRC after a hearing makes specific determinations that are based on misconduct." *Id.* at ¶ 42. As a result, we held that due-process protections are required when ODRC seeks to continue an offender's incarceration beyond the minimum term. *Id.*

{¶16} As we noted in *Guyton*, "[a] statute directing an administrative action that affects the deprivation of a liberty interest must be read as one with the constitutional concept of due process, unless the express terms of the statute preclude such a reading." *Guyton* at ¶ 44, citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 107-108, 67 S.Ct. 133, 91 L.Ed. 103 (1946), *The Japanese Immigrant Case*, 189 U.S. 86, 100-101, 23 S.Ct. 611, 47 L.Ed. 721 (1903), and *Indus. Acc. Bd. v. O'Dowd*, 157 Tex. 432, 436, 303 S.W.2d 763 (1957). The Reagan Tokes Law specifically requires a

7

hearing before continuing the offender's incarceration past the minimum term. R.C. 2967.271(C); *Guyton* at ¶ 57. And nothing about the statute *precludes* notice from being provided to the offender. R.C. 2967.271; *Guyton* at ¶ 57. While the Reagan Tokes Law does not explicitly require notice to the offender, nor does it outline the precise procedure for the ODRC hearing, we held in *Guyton* that "we must presume that the ODRC will fill in the 'gaps' to execute the law such that offenders are afforded due process before depriving an offender of the statutory liberty interest created by the Reagan Tokes Law." *Guyton* at ¶ 55. Accordingly, Edwards has not overcome the high burden to show that the statute is facially unconstitutional "since a set of circumstances exists under which the statute satisfies due process." *See Guyton* at ¶ 57.

### D.     Equal Protection

**{¶17}** Finally, Edwards argues that the Reagan Tokes Law denies equal protection of the law, as guaranteed by the Ohio and United States Constitutions, to himself and others within the ambit of the statute. Edwards correctly points out that the Reagan Tokes Law provides for differentiated treatment of first- and second-degree-felony offenders from those convicted of third-, fourth-, and fifth-degree felonies. Edwards claims that this distinction is impermissible because those convicted of more serious felonies are deprived of fundamental constitutional protections when facing an extension of their prison terms, while those protections are not withheld from those convicted of lower-degree felonies.

**{¶18}** We rejected this argument in *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, at ¶ 68. In a traditional equal-protection analysis, disparate treatment is permissible if the class distinctions are rationally related to a legitimate

8

governmental interest. *Id.* at 60, citing *State ex rel. Vana v. Maple Hts. City Council*, 54 Ohio St.3d 91, 92, 561 N.E.2d 909 (1990). However, if a suspect classification is used or the right implicated is a fundamental right, then a higher degree of scrutiny will apply. *Id.* at ¶ 60. Edwards makes no claim that higher-degree felony offenders are a suspect class. Although Edwards claims deprivation of many fundamental rights, we held in *Guyton* that those rights were inapplicable in ODRC's proceedings under the Reagan Tokes Law, which differ substantially from criminal prosecutions. *Guyton* at ¶ 64. Thus, the Reagan Tokes Law cannot be said to burden a fundamental right. *Guyton* at ¶ 64. We therefore apply rational-basis analysis.

{¶**19**} As we held in *Guyton*, Edwards's equal-protection claim against the Reagan Tokes Law fails under a rational-basis review. *See Guyton* at ¶ 68. The legislature has ample reason to provide disparate treatment for higher-degree felony offenders apart from lower-degree offenders. *Guyton* at ¶ 68. "The legislature's focus on Ohio's most serious felony offenders is not surprising considering the significant resources that are required to administer the indeterminate sentencing scheme." *Guyton* at ¶ 68. The state has ample interest in applying a sentencing model that strikes a balance between protecting the public against recidivism and promoting rehabilitation. *Guyton* at ¶ 66-68. Because the Reagan Tokes Law withstands rational-basis review, Edwards's facial challenge to its constitutionality on equal-protection grounds fails.

### V. Conclusion

{¶**20**} Edwards has failed to show that the Reagan Tokes Law is facially unconstitutional on the bases of separation of powers, substantive and procedural due process, and equal protection of the law. In light of the foregoing analysis and this

9

court's prior decision in *Guyton*, we overrule Edwards's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, J.**, concurs separately.
**ZAYAS, P.J.**, concurs in part and dissents in part.

**BOCK, J.**, concurring separately.

{¶21} I agree with the majority opinion that the Reagan Tokes Law is not facially unconstitutional under separation-of-powers, equal-protection, and substantive-due-process grounds. And I will follow this court's precedent in *State v. Guyton,* 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, by concurring with the majority opinion.

{¶22} But I agree with Judge Bergeron's thoughtful dissent in *Guyton* and, but for this court's precedent, would have held that the liberty interest implicated by an incarcerated person's presumptive release date is closer to a parole-revocation hearing, requiring the protections established under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Guyton* at ¶ 68 (Bergeron, J., dissenting). And, like Judge Bergeron, I believe that the additional-term hearing procedures under the Reagan Tokes Law contravene fundamental requirements of procedural due process. *Id.* at ¶ 88-96 (Bergeron, J., dissenting). Particularly, I believe the notice and hearing provisions in R.C. 2967.271 are deficient, rendering the statute unconstitutional on its face.

{¶23} I write separately to express my concerns over the disproportionate impact that the Reagan Tokes Law could have on women and minorities. Admittedly, a law described as an incentive-laden plan that centers around rehabilitation would not ordinarily raise concerns about fairness in prison discipline. After all, who does

10

not favor a sentencing scheme that "empowers [incarcerated people]?" And conferring authority to an executive agency in sentencing review is nothing new—" 'the executive branch's review has been a mainstay of Ohio law since time immemorial.' " *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, at ¶ 28, quoting *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 15 (8th Dist.).

{¶24} Nevertheless, " ' "a law nondiscriminatory on its face may be grossly discriminatory in its operation." ' " *M.L.B. v. S.L.J.*, 519 U.S. 102, 126-127, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), quoting *Williams v. Illinois*, 399 U.S. 235, 242, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), quoting *Griffin v. Illinois*, 351 U.S. 12, 17, 76 S.Ct. 585, 100 L.Ed. 891 (1955), fn. 11.

{¶25} The Reagan Tokes Law instructs ODRC, an executive agency, to determine whether ORDC itself has rebutted the presumption that incarcerated people will be released at the conclusion of their minimum terms. R.C. 2967.271(B). That determination hinges on 1.) disciplinary infractions, 2.) restrictive housing placements, or 3.) a level three, four, or five security classification. R.C. 2967.271(C). Incarcerated people are placed in restrictive housing for, among other reasons, disciplinary infractions. Ohio Adm.Code 5190-9-10(B). Likewise, security classifications are based, in part, on an incarcerated person's history of "disruptive behavior." In other words, the statute conditions the release date of an incarcerated person on that person's compliance with prison disciplinary policies.

{¶26} But underneath this gloss of objectivity lies a scheme that history and statistics tell us will subject incarcerated women and minorities to longer sentences.

{¶27} We know that mass incarceration disproportionately burdens minority groups—" 'African Americans are incarcerated in state prisons across the country at

more than five times the rate of whites, and at least ten times the rate in five states.' " *Ellis v. Ohio Dept. of Rehab. & Correction*, 2020-Ohio-6877, 165 N.E.3d 389, ¶ 27 (10th Dist.), quoting Ashley Nellis, *The Color of Justice: Racial and Ethnic Disparity in State Prisons*, https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnic-disparity-in-state-prisons (accessed Dec. 21, 2020). And the Association of Correctional Administrators found that, on average, the percentage of Black individuals in solitary confinement was disproportionate to the percentage of Black individuals in the total male population. The Arthur Liman Public Interest Program and Association of State Correctional Administrators, *Time-In-Cell,* 30 https://law.yale.edu/sites/default/files/area/center/liman/document/time-in-cell_combined_-web_august_2015.pdf (accessed September 8, 2022).

{¶28} Studies suggest that "minority offenders may be more likely to be *perceived as a disciplinary threat* by correctional officers, regardless of an offender's actual behavior." Andrea C. Armstrong, *Race, Prison Discipline, and the Law*, 5 U.C.IrvineL.Rev. 759, 770 (2015). And "[i]mplicit bias studies may also implicate the *severity of the punishment* an offender would receive for a rule violation." *Id.* A 2020 study found that Black and Indigenous people were more likely to receive write ups in prison and "received more sanctions such as disciplinary segregation, lost sentence credits, lost privileges, and extra duty hours as a result." Katherine M. Becker, *Racial Bias and Prison Discipline: A Study of North Carolina State Prisons*, 43 N.C.Cent.L.Rev. 175, 178-179 (2021).

{¶29} Consider the experiences of DeWayne McGee Richardson who, along with all other Black incarcerated individuals, was repeatedly subjected to administrative segregation, or lock downs, following rule violations committed by

12

Black incarcerated people. *Richardson v. Runnels*, 594 F.3d 666, 669 (9th Cir.2010). Prison officials explained that they "locked down black people because they were black * * * because the blacks were the ones who were, who were at risk. These inmates were the ones creating the security risk." *Id.* at 671 (reversing the grant of summary judgment in favor of the prison-official defendants because there was "no evidence to disprove [Richardson's] claim of racial discrimination governing the prison lockdowns to which he was subjected.").

{¶30} This disparate treatment goes beyond race. Recently, the United States Commission on Civil Rights warned that incarcerated women "often experience disparities in discipline" despite being less likely than their male counterparts to engage in violent conduct in prisons. U.S. Commission on Civil Rights, *Women in Prison: Seeking Justice Behind Bars*, 5-6 (Feb. 2020). Instead, "women receive a disproportionate number of disciplinary tickets for lower-level offenses—such as being disruptive, being 'insolent,' disobeying orders, cursing, and altering clothing." *Id.* at 124. Investigators were told that "the female prison population is distinct from the male population, and * * * prison rules and staff training are designed with the male population in mind." *Id.*

{¶31} When prison classification systems are not calibrated for gender-specific characteristics, women in prison are classified "at higher security requirement levels than necessary for the safety and security of prisons." *Id.* at 5. In turn, some women end up "serving time in more restrictive environments than is necessary and appropriate." *Id.*

{¶32} Still more, "women of color in prison and those who identify as LGBT face specific discipline disparities." *Id.* In prison, Black women comprised nearly 40

13

percent of the restrictive-housing population despite accounting for only 23 percent of the total female prison population. *Id.* at 138. Compared to their white counterparts, Black women "were over 2 times more likely than white women to serve time in restrictive housing." *Id.*

{¶33} LGBTQI+ people in prison "are subjected to harassment, abuse, and discriminatory treatment at the hands of prison officials and other inmates, particularly if they are transgender women placed in men's prisons." U.S. Commission on Civil Rights at 4. And lesbian, gay, or bisexual people in prison "were more likely than heterosexual inmates * * * to have spent some time in restrictive housing." U.S. Commission on Civil Rights at 135. A national survey revealed that 37 percent of transgender respondents reported harassment from correctional officers and staff. Jaime M. Grant, Lisa A. Mottet & Justin Tanis, *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey,* 166 https://transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf (accessed Sept. 8, 2022). Non-white respondents "experienced officer/staff harassment at higher rates (44%-56%) than their white peers." *Id.* Transgender men in prison "experience officer/staff harassment at a higher incident than their transgender female peers." *Id.*

{¶34} Statistics and research show that prison disciplinary "decisions are inextricably linked to race and gender." Dr. Melinda Tasca & Dr. Jillian Turanovic, *Examining Race and Gender Disparities in Restrictive Housing Placements,* https://www.ojp.gov/pdffiles1/nij/grants/252062.pdf (accessed Sept. 8, 2022). Corrections officers and administration "have wide discretion in sanctioning and

segregating inmates." *Id.* This discretion "can open the door to discriminatory practices." *Id.*

{¶35} That the Reagan Tokes Law ties these disciplinary practices to the decision to extend the length of an incarcerated person's sentence beyond the presumption is concerning. If incarcerated minorities and women receive disparate discipline in prison, their sentences will be increased beyond the Reagan Tokes Law presumption in a disparate manner. Indeed, such disparate treatment, whether a product of implicit or explicit biases, is exacerbated by the lack of due process provided in the Reagan Tokes Law. Due process provides protections to mitigate the effects of implicit bias. But under this statute as it currently stands, there are no protections and disparate treatment will go unchecked.

{¶36} Also concerning is the absence of public accountability for ODRC decisionmakers who extend a person's presumptive term of incarceration. Unlike Ohio judges, who face the scrutiny of the electorate every six years, appointed agency officials evade such scrutiny. Indeed, "prisons are largely secluded from public scrutiny." *Id.* And historically "American courts have expressed reservations about their capacity to regulate penal institutions." Justin Driver & Emma Kaufman, *The Incoherence of Prison Law,* 135 Harv.L.Rev. 515, 536 (2021). Out of concerns about not interfering with those having expertise in prison management and the propriety of judges regulating penal institutions grew a "reluctance to act [as] a core theme of American prison law." *Id.* at 537. As a result, prison officials are afforded unparalleled deference and courts considering constitutional challenges must weigh an incarcerated person's rights against the "legitimate penological interests" and possible "ripple effects" of protecting the person's rights. Driver & Kaufman at 536. This

deferential standard of review "render[s] prison law so unfavorable" that claims are "almost invariably extinguished." *Id.* at 539.

**{¶37}** I share Judge Bergeron's concern about the practicality of as-applied challenges to the Reagan Tokes Law. And I have serious concerns about how a person who has been unfairly disciplined based on race, sex, sexual orientation, or some other inappropriate factor could even begin to wage an as-applied challenge to the Reagan Tokes Law. With the lack of transparency of prison discipline, the lack of avenues to challenge such discipline, and the lack of due process provided in the statute, it would be difficult to challenge an increased sentence when it is based on such discipline.

**ZAYAS, P.J.**, concurring in part and dissenting in part.

**{¶38}** I agree with the majority opinion that the Reagan Tokes Law is not facially unconstitutional under separation-of-powers, equal-protection, and substantive-due-process grounds. With respect to procedural due process, I respectfully dissent because I agree with Judge Bergeron's thoughtful dissent in *Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962 at ¶ 107 (Bergeron, J., concurring in part and dissenting in part), that the notice and hearing procedures under the Reagan Tokes Law violate the fundamental requirements of procedural due process. I depart from this court's precedent because " 'stare decisis' does not apply with the same force and effect when constitutional interpretation is at issue." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 35-37; *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 38 (Fischer, J., concurring).

Please note:

16

The court has recorded its entry on the date of the release of this opinion.

