[Cite as *State v. Guyton*, 2022-Ohio-2962.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190657 |
| | | TRIAL NO. B-1902315 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| TERMEL GUYTON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 26, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Termel Guyton appeals the judgment of the Hamilton County Court of Common Pleas sentencing him to an indefinite prison term after he pled guilty to trafficking in cocaine. In his sole assignment of error, he argues that the indefinite sentencing scheme established under 2018 Am.Sub.S.B. 201, identified under R.C. 2901.011 as the Reagan Tokes Law, is unconstitutional because it violates the separation-of-powers doctrine, infringes upon his due-process rights, and denies him the equal protection of the law.

{¶2} Upon review, we join our sister appellate districts that have deemed the sentencing scheme embodied in the Reagan Tokes Law to be constitutional. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

## I. Facts and Procedure

{¶3} In May 2019, Guyton was indicted on one count of trafficking in cocaine and one count of possession of cocaine, both with major-drug-offender specifications and charged as first-degree felonies. The charges related to conduct occurring after March 22, 2019, the effective date of the Reagan Tokes Law. The offenses are qualifying offenses under the indefinite sentencing provisions set forth in that law.

{¶4} In November 2019, the state and Guyton entered into a plea bargain. Guyton pled guilty to the trafficking count in exchange for dismissal of the possession count and both specifications. The trial court accepted Guyton's guilty plea. At the sentencing hearing that immediately followed, Guyton complained about the indefinite sentence and advocated for a three-year definite term.

{¶5} The trial court sentenced Guyton to an indefinite term of three-to-four-and-one-half years in prison consistent with the new range for qualifying first-degree-

felony offenses. After the trial court imposed the indefinite sentence, Guyton objected to the constitutionality of the Reagan Tokes Law, claiming the indefinite sentencing scheme involves a delegation of authority that violates the separation-of-powers doctrine. Guyton now appeals his sentence.

## II. Preliminary Issues

{¶6} Guyton argues the trial erred as a matter of law by imposing an indefinite sentence pursuant to the Reagan Tokes Law because the Reagan Tokes Law violates the state and federal constitutional provisions for separation of powers, due process, and equal protection.

## A. Waiver

{¶7} Initially, we address the state's argument that Guyton failed to preserve the constitutional challenges he now raises. Typically, a constitutional argument not meaningfully raised in the trial court cannot be raised for the first time on appeal. *See State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986); *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 37 (holding appellant waived his right to challenge the constitutionality of the Reagan Tokes Law where he failed to raise the challenge in the trial court).

{¶8} Appellate courts, however, retain the ability to consider constitutional challenges to the application of statutes in specific cases of "plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus, cited in *Barnes* at ¶ 31; *State v. Warner*, 55 Ohio St.3d 31, 42, 564 N.E.2d 18 (1990); *State v. Zuern*, 32 Ohio St.3d 56, 63, 512 N.E.2d 585 (1987) ("The acceptable procedure is to raise any constitutional challenges to the death penalty statute by way of specific motions, with opportunity for the state to respond

3

and the trial court to rule on said motions. However, because of the nature of the case and the exacting review necessary where the death penalty is involved, we reserve the right to consider the constitutional challenges in particular cases.").

{¶9}   Guyton does not assert a claim of plain error in this appeal, but contends that if this court concludes he failed to sufficiently preserve his challenge, the rights and interests at stake are sufficient for this court to exercise discretion to fully consider a constitutional challenge. The state also recognizes the important issues raised in this appeal. Against this backdrop, we proceed with our review of Guyton's constitutional challenge.

## B.  Ripeness

{¶10}   A constitutional challenge to the Reagan Tokes Law that does not require further factual development is ripe for review on direct appeal by a defendant sentenced to an indefinite prison term under the Reagan Tokes Law. *See State v. Maddox*, Slip Opinion No. 2022-Ohio-764, ¶ 11 and 21. Guyton argues the Reagan Tokes Law is facially unconstitutional. This challenge is ripe for review, even though Guyton may later bring an as-applied challenge that depends upon future factual development.

## III. The Reagan Tokes Law

{¶11}   Effective March 22, 2019, the Reagan Tokes Law restored indefinite sentencing in Ohio for persons convicted of non-life-sentence felony offenses of the first or second degree. *See Maddox* at ¶ 4; *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 1 (8th Dist.). The Reagan Tokes Law has been characterized as an "incentive-laden approach to criminal justice" that replaced a definite sentencing scheme for certain serious offenders. *Delvallie* at ¶ 13. It appears the legislature

4

concluded the definite sentencing scheme failed the public, and Reagan Tokes specifically. *Delvallie* at ¶ 1, 11-12. She was raped and murdered by a man after he served a definite sentence marked by "perpetual misconduct." *Id.* at ¶ 1. In other words, he was not rehabilitated at the conclusion of his incarceration and the legislature tied the subsequent tragedy to the definite sentencing scheme. *Id.* at ¶ 1. The indefinite sentencing scheme "empowers inmates" with a novel presumption of release at the end of their minimum term and includes a provision for the earned reduction of a minimum prison term. *Id.* at ¶ 12.

{¶12} Under the Reagan Tokes Law, the indefinite terms consist of a minimum term selected by the sentencing court from an established statutory range, *see* R.C. 2929.14(A)(1)(a) and (2)(a), and a maximum term determined by formulas set forth in R.C. 2929.144. Generally, the maximum term is an additional 50 percent of the imposed minimum term. *See* R.C. 2929.144.

{¶13} The Reagan Tokes Law establishes a presumptive release date at the end of the minimum term. R.C. 2967.271(B). The Ohio Department of Rehabilitation and Correction ("ODRC") may rebut that presumption under specified circumstances and keep the offender in prison for an additional period not to exceed the maximum term imposed by the sentencing court. R.C. 2967.271(C).

{¶14} To rebut the presumption that an offender will be released when the minimum term expires, the ODRC must conduct a hearing and determine if one or more factors apply. Specifically, the statute provides:

> The department may rebut the presumption only if the department
> determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2), and (3).

{¶15} In addition to affording the ODRC a role in determining if an offender should be imprisoned beyond the minimum term imposed, the Reagan Tokes Law also

6

allows the ODRC to affect a reduction of the minimum term upon obtaining requisite approval from the sentencing court. *See* R.C. 2967.271(F).

{¶16} The ODRC is an agency under the executive branch of government, the branch the legislature has delegated authority to execute judicially-imposed sentences. That branch also oversees the complicated environment of Ohio's prisons and inmates. *See, e.g.*, Ohio Adm.Code 5120-9-08 (providing for a detailed disciplinary proceeding for inmate rules violations). The ODRC's "responsibility over the release determinations under R.C. 2967.271(C)-(F) * * * is similar, if not identical, to the executive branch's authority to release offenders from sentences under Ohio's parole system for indefinite life sentences." *Delvallie,* 2022-Ohio-470, 180 N.E.3d 536, at ¶ 25.

{¶17} Guyton's constitutional arguments focus on the provisions in R.C. 2967.271 that relate to the ODRC's role in furthering the indefinite sentencing scheme embodied in the Reagan Tokes Law.

### IV. Analysis

{¶18} We begin our analysis with the presumption that the Reagan Tokes Law is constitutional. When addressing constitutional challenges, we are mindful of the rule that all statutes have a strong presumption of constitutionality. *See Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25; *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). R.C. 1.47(A) specifies that "[i]n enacting a statute, it is presumed that * * * [c]ompliance with the constitutions of the state and of the United States is intended." Therefore, "if at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *Collier* at 269.

{¶19} "When a statute is challenged on its face, the challenger must provide proof beyond a reasonable doubt that no set of circumstances exists under which the statute would be valid." *State v. Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, ¶ 21, citing *Adams v. DeWine*, Slip Opinion No. 2022-Ohio-89, ¶ 27. To prevail on his facial constitutional challenge, Guyton must demonstrate beyond a reasonable doubt that the legislation and the specified constitutional provisions or concepts are "clearly incompatible." *Warner*, 55 Ohio St.3d at 43, 564 N.E.2d 18.

### A. Separation-of-Powers Doctrine

{¶20} Guyton argues the indefinite sentencing scheme of the Reagan Tokes Law violates the separation-of-powers doctrine. This doctrine, recognizing the importance of maintaining three distinct and co-equal branches of government, is not explicitly set forth in the United States or Ohio Constitutions. *See Eaton* at ¶ 28. Courts have long held, however, that the separation-of-powers doctrine is implicit in these constitutions and that the doctrine limits statutory sentencing schemes. *See id.*, citing *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

{¶21} The Sixth Appellate District has aptly summarized the parameters of the separation-of-powers doctrine:

> [T]he "three-way sharing" among the legislative, judicial, and executive branches in the realm of indeterminate sentencing does not violate the separation-of-powers doctrine when the legislature establishes the prison terms that may be imposed, the judiciary imposes a sentence in compliance with that statutory edict, and the executive branch is authorized to determine the portion of the sentence that the offender

8

will ultimately serve, up to the maximum imposed by the sentencing court.

*Eaton* at ¶ 29, quoting *Mistretta* at 364.

{**¶22**} Guyton argues the Reagan Tokes Law sentencing scheme violates the separation-of-powers doctrine in two ways. According to Guyton, the Reagan Tokes Law impermissibly allows the ODRC to "extend the sentence imposed by the sentencing judge," resulting in an "amend[ment of] a final judgment of a trial court" and "impinging upon the judiciary's inherent authority to sentence and issue final judgments." Additionally, Guyton characterizes the Reagan Tokes Law as allowing the ODRC to impermissibly "charge, judge, convict, and sentence for the commission of a new act," resulting in "the executive branch perform[ing] the inherent judicial functions of trial, verdict, and sentence." These complaints relate to the ODRC's responsibilities for determining the offender's release date under the indeterminate sentencing scheme.

{**¶23**} Guyton's arguments are based on a misreading of the governing provisions in the Reagan Tokes Law. The indefinite sentencing structure requires the trial court to impose both a minimum and maximum prison term at sentencing and include that sentence in the final judgment of conviction. R.C. 2929.14(A)(1)(a) and (2)(a); R.C. 2929.144(B) and (C).

{**¶24**} R.C. 2967.271(C) creates a presumption that the offender will be released at the conclusion of the minimum term, a presumption ODRC may rebut. If ODRC rebuts that presumption, ODRC may order the offender to serve the indefinite portion of the term up to the maximum term imposed by the trial court at sentencing.

9

{¶25} In this regard, the Reagan Tokes Law sentencing scheme merely creates a "judicially imposed but executively enforced structure," *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 59, that "mirrors" sentencing structures that have consistently passed constitutional muster against a separation-of-powers challenge. *See Eaton* at ¶ 60. This sentencing structure is dissimilar to the "bad time" statute that the Ohio Supreme Court held unconstitutional. *See State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000). That statute allowed the Adult Parole Authority, an agency of the executive branch, to determine if an offender committed "a criminal offense" while serving his or her judicially imposed prison term and to impose additional days of prison *beyond* the prison term imposed by the court at the offender's sentencing hearing based on that determination. *See Bray* at 135-136, cited in *Eaton* at ¶ 41-42.

{¶26} After a comprehensive analysis of the Reagan Tokes Law, and a comparative analysis of other sentencing schemes, the *Eaton* court upheld the Reagan Tokes Law's sentencing structure against a separation-of-powers doctrine challenge. Ultimately, the appellant in *Eaton* failed to demonstrate that the authority granted to ODRC to determine whether he would serve the indeterminate portion of the sentence imposed by the trial court "actually usurps powers granted solely to the judiciary" and therefore "exceeds the [constitutionally required] three-way sharing model" embodied in the separation-of-powers doctrine. *Eaton* at ¶ 29 and 60.

{¶27} All our sister appellate districts that have considered the issue have rejected a separation-of-powers constitutional challenge because under the Reagan Tokes Law the judiciary imposes that sentence that is enforced by the ODRC. *See, e.g., State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 23; *State v.*

10

*Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22 (3d Dist.), *discretionary appeal allowed,* 161 Ohio St.3d 1449, 2021-Ohio-534, 163 N.E.3d 585; *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607, ¶ 44 (4th Dist.); *State v. Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684, ¶ 52 (5th Dist.); *State v. Maddox*, 2022-Ohio-1350, 188 N.E.3d 682, ¶ 7 (6th Dist.); *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 60; *Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (en banc), *discretionary appeal allowed*, 166 Ohio St.3d 1496, 2022-Ohio-1485, 186 N.E.3d 830; *State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 25.

**{¶28}** This analysis recognizes that "the indefinite prison sentence with the executive branch's review has been a mainstay of Ohio law since time immemorial." *Delvallie* at ¶ 15. We concur with this analysis and reject Guyton's claim that the indefinite sentencing scheme set forth in the Reagan Tokes Law violates the separation-of-powers doctrine.

### B. Due Process and Due Course of Law

**{¶29}** Guyton next contends that the Reagan Tokes Law violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Course of Law Clause of the Ohio Constitution. The federal and state constitutional provisions are treated as equivalent in the protections they afford. *Stolz v. J. & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 12; *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15.

**{¶30}** Guyton first argues that individuals sentenced under the Reagan Tokes Law have a substantive-due-process right to be free from illegal bodily restraint, which is violated because the Reagan Tokes Law allows for individuals "to be held beyond their lawful sentence" without affording the full panoply of rights due a defendant in

11

criminal proceedings. Relatedly, he argues that individuals sentenced under the law have a liberty interest in being free from confinement at the expiration of the imposed minimum term, and the Reagan Tokes Law lacks adequate safeguards protecting that interest, resulting in a deprivation of the right to procedural due process.

{¶31} We address each argument in turn. Like our sister districts, we find the arguments lacking merit. *See, e.g.*, *Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, at ¶ 25; *Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, at ¶ 23; *Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607, at ¶ 48; *Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684, at ¶ 51; *Maddox*, 2022-Ohio-1350, 188 N.E.3d 682, at ¶ 7; *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 143; *Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 50-51; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17.

## 1. Substantive Due Process

{¶32} Guyton begins this argument by reciting the well-accepted rule that the federal Due Process Clause and its Ohio counterpart afford heightened protection against government interference with certain fundamental rights and liberty interests. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Substantive due process forbids infringing upon fundamental liberty interests except where narrowly tailored to serve a compelling state interest. *Id.*

{¶33} Guyton claims the Reagan Tokes Law manifests a violation of an individual's substantive right to be free from illegal bodily restraint, citing *Sandin v. Connor*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). He contends the Reagan Tokes Law is constitutionally offensive because it extinguishes the freedom from

confinement beyond the term of his "sentence" without affording essential preconviction protections such as "the right to a public trial before an impartial jury."

**{¶34}** Generally, the first issue in a substantive-due-process challenge is how to characterize the individual's asserted right. *Stolz,* 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, at ¶ 14. Here, Guyton's entire substantive-due-process argument is based upon a faulty characterization of the indefinite sentencing scheme adopted in the Reagan Tokes Law. As previously explained, those sentenced under the Reagan Tokes Law are merely required to serve a sentence within the range *imposed by the trial court.* The Reagan Tokes Law does not allow the ODRC to extend the maximum term imposed by the sentencing court.

**{¶35}** When ODRC's responsibilities under the Reagan Tokes Law are triggered, the offender stands convicted. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. * * * [T]he conviction, with all its procedural safeguards, has extinguished that liberty right: '[Given] a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' " *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), cited in *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

**{¶36}** The administrative proceedings contemplated in the Reagan Tokes Law fall under the category of prison disciplinary proceedings. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

13

**{¶37}** Guyton's argument, that the Reagan Tokes Law is subject to strict-scrutiny analysis and violates the substantive protections of the state and federal Due Process Clauses because it "allows for individuals to be held beyond their lawful sentence" without affording preconviction procedural protections, is based on a factually inaccurate premise. Although strict-scrutiny analysis does not apply, the Reagan Tokes Law must still meet the standard of rationally advancing some legitimate purpose. As we discuss in connection with Guyton's Equal Protection Clause challenge, the state has a legitimate interest in protecting the public and rehabilitating offenders, and these legitimate interests justify the Reagan Tokes Law.

## 2. Procedural Due Process

**{¶38}** Next we address Guyton's arguments implicating the guarantee of procedural due process. Under the United States and Ohio Constitutions, procedural due process demands that, where the state infringes on protected liberty or property interests, the offender has a right to notice and an opportunity to be heard in a meaningful and timely manner. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000). The constitutional due-process requirements protect against the "mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

**{¶39}** As previously noted, there is no constitutional right to early release from confinement for a valid criminal conviction. *See Swarthout*, 562 U.S. at 219-220, 131 S.Ct. 859, 178 L.Ed.2d 732. But a state may create a liberty interest in an early release from confinement. *See id.*

14

{¶40} By its express terms, R.C. 2967.271(B) creates a presumption in favor of release from service of the judicially imposed sentence on the expiration of the offender's minimum term (or on an even earlier date) unless the Ohio standards for denying that early release have been met. The offender is advised of this presumption at the time of sentencing and is also advised that the early release is conditional.

{¶41} At the time of sentencing, the trial court must inform the defendant that "the department of rehabilitation and correction may rebut the presumption * * * if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification"; that "if the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code"; that "the department may make the specified determinations and maintain the offender's incarceration * * * more than one time"; and that at the "expiration of the offender's maximum prison term imposed as part of the sentence," the offender must be released. R.C. 2929.19(B)(2)(c).

{¶42} The statutory provisions at issue give a prisoner far more than a unilateral hope of early release. Instead, these Ohio laws create a right to early release for the prisoners unless the ODRC after a hearing makes specific determinations that are based on misconduct. Some determinations are subjective, some are objective.

15

This is the type of "liberty" interest triggering entitlement to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557, 94 S.Ct. 2963, 41 L.Ed.2d 935.

**{¶43}** Guyton faults the Reagan Tokes Law for not expressly affording "fair" procedures before depriving an offender of the statutorily created liberty interest. The question in this facial challenge, however, is whether the law is capable of being enforced in a manner that would not violate an offender's right to due process. The specific procedural requirements to protect the liberty interest here, involving a conditional right of early release from a lawfully imposed sentence, "need not be set forth in the legislation itself." *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 168 (Mayle, J., concurring in judgment only with respect to the procedural-due-process issue and writing separately, joined by Duhart, P.J.).

**{¶44}** A statute directing an administrative action that affects the deprivation of a liberty interest must be read as one with the constitutional concept of due process, unless the express terms of the statute preclude such a reading. *See, e.g., Am. Power & Light Co. v. SEC*, 329 U.S. 90, 107-108, 67 S.Ct. 133, 91 L.Ed. 103 (1946); *The Japanese Immigrant Case*, 189 U.S. 86, 100-101, 23 S.Ct. 611, 47 L.Ed. 721 (1903) ("[T]his court has never held, nor must we now be understood as holding, that administrative officers, when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law[.]' * * * In the case of all acts of Congress, such interpretation ought to be adopted as, without doing violence to the import of the words used, will bring them into harmony with the Constitution. An act of Congress must be taken to be constitutional

16

unless the contrary plainly and palpably appears. The words here used do not require an interpretation that would invest executive or administrative officers with the absolute, arbitrary power implied in the contention of the appellant."); *Indus. Acc. Bd. v. O'Dowd*, 157 Tex. 432, 436, 303 S.W.2d 763 (1957).

{¶45} We do not discern any provision in the Reagan Tokes Law that overcomes the strong presumption an offender will be afforded the requisite process due at all stages of the indeterminate sentencing scheme, including during any administrative proceedings.

{¶46} As previously noted, the Reagan Tokes Law requires the trial court to personally inform the offender at the time of sentencing of the rules of indeterminate sentencing, including that the ODRC can make determinations regarding the offender's conduct while confined that impact the offender's release date. Further, the Reagan Tokes Law on its face guards against arbitrary action by requiring the ODRC to hold a hearing and make specific determinations that, in the legislature's point of view, warrant maintaining incarceration. The Reagan Tokes Law also limits the ODRC's discretion in maintaining an offender's incarceration in another important way: allowing only a "reasonable" period that cannot exceed the maximum term.

{¶47} Guyton specifically criticizes the process in R.C. 2929.271(C) to determine if the ODRC has rebutted the presumption of early release based on rule infractions and violations of the law that have not been prosecuted. *See* R.C. 2929.271(C)(1)(a) and (b). He argues that "a hearing on infractions that occur within the prison, and that is presided over and prosecuted by ODRC, without judicial involvement, can never be deemed meaningful or fair." This argument relates to

Guyton's alternate claim that the liberty interest at stake is at least equal to that at stake in parole-revocation proceedings.

{¶48} The United States Supreme Court has specified that the minimum requirements of due process pertaining to parole revocation include:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e*) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers*; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

(Emphasis added.) *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

{¶49} Even under the *Morrissey* standard for parole revocation, the "neutral and detached" decision maker need not be from the judicial branch. The Twelfth District Court of Appeals emphasized this when it rejected Guyton's due-process challenge to the Reagan Tokes Law in that court. *See Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, at ¶ 17 ("[B]ecause due process does not require the sentencing court to conduct parole revocation proceedings, probation revocation proceedings, or postrelease control violation hearings, we likewise conclude that due process does not require the sentencing court to conduct a hearing under R.C.

18

2967.271(C) to determine whether the ODRC has rebutted the presumption set forth in R.C. 2967.271(B).").

**{¶50}** Guyton also specifically criticizes the Reagan Tokes Law for allowing the ODRC to evaluate an offender's conduct in prison, and to make a decision based on the conduct, without affording the offender the right to notice of the proceeding or the right to be heard in opposition to any proposed action by the ODRC in its progress. This argument relates specifically to R.C. 2967.271(E), which requires ODRC to provide notices of hearings to the prosecutor and victims, yet is silent with regard to notice to the offender.

**{¶51}** Guyton reads the constitution out of the statute. Given the presumption of constitutionality, and the absence of an intent to exclude these proceedings from the due-process protections afforded administrative decision making, we must construe the statute and the constitution together as one law. *See Am. Power & Light Co.*, 329 U.S. at 107-108, 67 S.Ct. 133, 91 L.Ed. 103; *The Japanese Immigrant Case*, 189 U.S. at 101, 23 S. Ct. 611, 47 L.Ed. 721; *Collier*, 62 Ohio St.3d at 269, 581 N.E.2d 552. As related to this case, the constitutional requirement of due process demands the offender receive notice and an opportunity to be heard in a timely and meaningful manner regarding decisions involving a deprivation of the offender's liberty interest.

**{¶52}** Even if the notice provision in R.C. 2967.271(E) creates an ambiguity, we must adhere to the principle that "if it is reasonably possible, validly enacted legislation must be construed in a manner which will avoid rather than a construction which will raise serious questions as to its constitutionality." *Co-operative Legislative Commt. of Transp. Brotherhoods v. Pub. Utils. Comm.*, 177 Ohio St. 101, 202 N.E.2d 699 (1964), paragraph two of the syllabus, cited in *State ex rel. Cincinnati Enquirer v.*

19

*Winkler*, 149 Ohio App.3d 350, 2002-Ohio-4803, 777 N.E.2d 320, ¶ 29-30 (1st Dist.). "A construction must not ignore the plain terms of the statute or 'insert a provision not incorporated therein by the Legislature.' " *Winkler* at ¶ 29, quoting *State ex rel. Defiance Spark Plug Corp. v. Brown*, 121 Ohio St. 329, 331-332, 168 N.E. 842 (1929). "Otherwise, however, a construction of a statute must only bear some 'reasonable relationship to the language of the enactment.' " *Id.*, quoting *Akron v. Rowland*, 67 Ohio St.3d 374, 380, 618 N.E.2d 138 (1993).

{¶53} When reviewing the challenged notice provision, we recognize that the process due the offender whose liberty interest is affected does not require notice to other groups including the sentencing court, the prosecutor, or the victim. The statute speaks on that issue by affording a statutory right to notice to the sentencing court, the prosecutor, the victim, and others, groups with distinct interests in the hearings conducted under R.C. 2967.271(C) and (D). Construing that notice provision as simply affording notice to those not entitled to due process, but not to the exclusion of those with a protected liberty interest, "bear[s] some reasonable relationship to the language of the enactment." *Rowland* at 380.

{¶54} As articulated in *Eaton*, "the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific procedures for invoking an additional period of incarceration are not set forth in the law itself. So long as the ODRC ultimately enforces the law in a manner consistent with the process due an offender, an offender's constitutional rights will not be violated." *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 168 (Mayle, J., concurring in judgment only with respect to procedural-due-process issue and writing

separately, joined by Duhart, P.J.); *see Devallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 52.

**{¶55}** Ultimately, we must presume that the ODRC will fill in the "gaps" to execute the law such that offenders are afforded due process before depriving an offender of the statutory liberty interest created by the Reagan Tokes Law. R.C. 5120.01 authorizes the ODRC to do so, and we must read that statute in conjunction with R.C. 2967.271. *See Delvallie* at ¶ 60; *see also* R.C. 1.47(C) and (D) ("In enacting a statute, it is presumed that [the legislature intended]" a "just and reasonable result" and one "feasible of execution."). While Guyton asks this court to consider policy statements created by the ODRC after he was sentenced that set forth the procedures for the presumption-rebuttal hearing, we are constrained to determine whether the sentencing law as enacted infringes on a defendant's constitutional rights. *See Eaton* at ¶ 165 (Mayle, J., concurring in judgment only with respect to procedural-due-process issue and writing separately, joined by Duhart, P.J.)*; Delvallie* at ¶ 25.

**{¶56}** Our holding today does not preclude Guyton from challenging the Reagan Tokes Law as applied to him, a challenge that will allow for a fact-based review of the process afforded to him by the ODRC. *See Eaton* at ¶ 169. "But given this is a facial challenge to the law, it cannot be said at this juncture that the law 'cannot be applied constitutionally in any circumstances.' " *State v. Stenson*, 6th Dist. Lucas No. L-201074, 2022-Ohio-2072, ¶ 33.

**{¶57}** In sum, R.C. 2967.271 does not preclude notice to the defendant and specifically contemplates a hearing. Because notice may be given, and must be given under the law, Guyton cannot demonstrate beyond a reasonable doubt that the statute

is unconstitutional since a set of circumstances exists under which the statute satisfies due process.

## C. Equal Protection Clause

{¶58} Finally, Guyton argues the Reagan Tokes Law denies equal-protection guarantees set forth in the Ohio and United States Constitutions. Article I, Section 2 of the Ohio Constitution provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Guyton treats these two guarantees as "functionally equivalent" provisions that implicate the same analysis. This approach is in accordance with Ohio Supreme Court precedent. *See Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, at ¶ 29.

{¶59} Guyton specifies that the class of individuals subjected to disparate treatment under the Reagan Tokes Law is comprised of first- and second-degree-felony offenders sentenced to a term other than life imprisonment. Guyton asserts, and it is not disputed, these inmates are treated differently from inmates serving time for third-, fourth-, and fifth-degree-felony convictions, whose sentences are not subject to the indeterminate sentencing scheme.

{¶60} "Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved." *State ex rel. Vana v. Maple Hts. City Council*, 54

Ohio St.3d 91, 92, 561 N.E.2d 909 (1990), citing *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

{**¶61**} Guyton's primary argument, as we understand it, is that the Reagan Tokes Law creates a classification that burdens a fundamental right. In support of his equal-protection argument, Guyton cites to *State v. Lane.* In *Lane,* the Ohio Supreme Court held that the jury trials of three inmates prosecuted for escape violated the equal-protection rights of those inmates where the trials were held within the prison administrative building for security and convenience. *State v. Lane*, 60 Ohio St.2d 112, 397 N.E.2d 1338 (1979).

{**¶62**} Guyton contends that like the defendants in *Lane*, first- and second-degree-felony offenders sentenced under the Reagan Tokes Law and subject to the ODRC's "extension of their sentences" will be deprived of their fundamental rights attendant in criminal prosecutions such as the right to a public jury trial.

{**¶63**} " 'When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.' " *Bd. of Edn. of City School Dist. of City of Cincinnati v. Walter*, 58 Ohio St.2d 368, 373, 30 N.E.2d 813 (1979), quoting *Zablocki v. Redhail*, 434 U.S. 372, 388, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

{**¶64**} The circumstances that resulted in an equal-protection violation in *Lane* are not present in this case. The ODRC's proceedings are not criminal prosecutions that trigger the full panoply of rights inherent in a criminal prosecution. Thus, Guyton has not demonstrated that the Reagan Tokes Law burdens a

fundamental right. *See Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684, at ¶ 62 (rejecting an equal-protection-clause challenge to the Reagan Tokes Law).

{**¶65**} Guyton's primary Equal Protection Clause argument collapses because he cannot demonstrate that similarly situated individuals are treated disparately with respect to a fundamental right. At issue is simply a state sentencing scheme. The legislature has enacted an indeterminate sentencing structure for certain serious felony offenders that does not apply to less serious felony offenders. We apply a rational-basis review to Guyton's claim. *See McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973) (applying rational-basis review to state sentencing schemes), cited in *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, ¶ 31; *State v. Thompkins*, 75 Ohio St.3d 558, 560-561, 664 N.E.2d 926 (1996).

{**¶66**} Under rational-basis review, we can hold the legislative distinctions invalid "only if they bear no relation to the state's goals and no ground can be conceived to justify them." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 353, 639 N.E.2d 31 (1994); *Thompkins* at 561. The legislature undoubtedly has a goal of rehabilitating offenders so that when those offenders are released they do not create "an unsafe condition for an unsuspecting public." *See Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 1. The legislature's "incentive-laden approach" that involves the ODRC in release decisions bears a logical and reasonable relationship to the state's goal. *See id.* at ¶ 11 and 12. We are not alone in our determination.

{**¶67**} Judge Sean C. Gallagher, writing for the majority in the Eighth District Court of Appeals' en banc decision rejecting a constitutional challenge to the Reagan Tokes Law, commented, "The Reagan Tokes Law appears to be an effort to return Ohio to its core sentencing approach, implementing the reformative incentive for offenders

24

that was lost to the definite sentencing structure." *Delvallie* at ¶ 12, citing Griffin and Katz, *Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan*, 52 Case W.Res.L.Rev. 1, 38 (2002).

{¶68} The legislature's focus on Ohio's most serious felony offenders is not surprising considering the significant resources that are required to administer the indeterminate sentencing scheme. Moreover, the legislature's connection between recidivism upon release and an offender's placement in restrictive housing, security risk classification, and dangerous, antisocial conduct while in prison makes logical sense. The state has a great interest in the success of the Reagan Tokes Law, which departs from a "purely punitive prison policy," and the use of the prison-rule-infraction system as a model and vehicle to attain that goal passes constitutional muster under a rational-basis standard of review.

### V. Conclusion

{¶69} Guyton has failed to demonstrate the indefinite sentencing scheme enacted under the Reagan Tokes Law is unconstitutional on its face because it violates the separation-of-powers doctrine, infringes upon his due-process rights, and denies him the equal protection of the law. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**MYERS, P.J.**, concurs.
**BERGERON, J.**, concurs in part and dissents in part.

**BERGERON, J.**, concurring in part and dissenting in part.

{¶70} I agree with the majority that the Reagan Tokes Law does not facially violate separation of powers, equal protection, or substantive due process, but I respectfully disagree with the majority's conclusion regarding procedural due process.

25

The General Assembly failed to include basic due process protections in the Reagan Tokes Law, and we are already seeing the manifestations of that omission. I would accordingly reverse the case on that basis.

I.

**{¶71}** The constitutionality of a statute presents questions of law, which are "reviewed de novo, independently and without deference to the trial court's decision." *Andreyko v. City of Cincinnati*, 153 Ohio App.3d 108, 112, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 11 (1st Dist.). In conducting this review, I recognize that statutes "enjoy a strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7.

**{¶72}** To establish that the Reagan Tokes Law facially violates procedural due process, defendants must prove beyond a reasonable doubt that there are no set of circumstances under which the statutory scheme would be valid. *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 26 ("A party asserting a facial challenge to a statute must prove beyond a reasonable doubt 'that no set of circumstances exists under which the act would be valid.' "), quoting *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21.

**{¶73}** We follow a two-step analysis when reviewing procedural due process challenges: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

26

II.

**{¶74}** Turning first to the issue of whether the Reagan Tokes Law creates a liberty interest that triggers due process concerns, like the majority, I have no hesitation in answering yes to that question. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' " or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), citing *Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment), and *Wolff v. McDonnell*, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding the withdrawal of state-created system of good-time credits).

**{¶75}** R.C. 2967.271(B) provides "[w]hen an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." The presumptive release date creates a liberty interest worthy of due process protections. Even those courts that have held that the Reagan Tokes Law satisfies due process have recognized that it gives rise to a liberty interest that cannot be deprived absent due process. *See, e.g., State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, ¶ 25 ("Because the Reagan Tokes Law creates a presumption of release

27

after service of an offender's minimum sentence, we conclude that it creates a liberty interest implicating due process rights."); *State v. Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684, ¶ 31 (5th Dist.) ("Having created an enforceable liberty interest in parole by the express terms of the Reagan Tokes Act, the question now becomes what process is due in the prison setting."); *State v. Powell*, 2d Dist. Montgomery No. 29097, 2022-Ohio-1343, ¶ 33 ("There can be no doubt that [the defendant] received extensive procedural due process befitting his important liberty interest."). I agree with our sister districts and the majority on this point. In light of the near consensus on the liberty interest question, I don't dwell on it further, and instead turn to the consideration of what process should be due to protect the liberty interest at stake.

### III.

**{¶76}** The Reagan Tokes Law forged a novel statutory regime in which the presumptive release date can only be extended in certain limited circumstances. As our sister courts have evaluated this, they have attempted to place the square peg of this statute in the round hole of existing procedural due process caselaw. With imperfect analogies available, the results have been mixed thus far. But as I look at the more recent caselaw, a growing consensus seems to be emerging that the parole revocation standard set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), governs. I also agree that the *Morrissey* framework provides the best mechanism for evaluating the constitutionality of the Reagan Tokes Law rather than parole eligibility.

**{¶77}** *Morrissey* considered whether the requirements of due process apply to parole revocation determinations. *Id*. at 480. The United States Supreme Court began by analyzing the nature of the liberty interest at stake in parole revocation decisions.

28

*Id.* at 481. In so doing, the Court recognized that parole revocation "inflicts a 'grievous loss' on the parolee" because it deprives him of the ability to live a "relatively normal life" under the "implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* at 482. Given the inmate's interest in this "conditional liberty," as well as society's interest in "fair treatment in parole revocations [to] enhance the chance of rehabilitation by avoiding reactions to arbitrariness," the Court held that both the parolee's and the state's interests would be "furthered by an effective but informal hearing." *Id.* at 484-485. According to *Morrissey*, the minimum requirements for this hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 488-489.

{¶78} In the Eighth District's en banc decision in *Delvallie*, while the Eighth District held that the Reagan Tokes Law delegated authority to the Department of Rehabilitation and Correction ("DRC") to promulgate due process safeguards by administrative action, the lead opinion repeatedly measured those actions against the *Morrissey* standard. *See State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 72 (8th

Dist.) ("Since *Sealey* and *Daniel*, in particular, both rely on *Morrissey*, the sole concern is whether ODRC promulgated the procedures satisfying the guidelines set forth therein. *Morrissey* does not require a statutory procedure or one promulgated through formal agency rulemaking."). That said, the Eighth District ultimately concluded that "[w]hether those rules comply with *Morrissey* is an issue left for another day when properly advanced by the defendants" either by a declaratory judgment action or habeas action. *Id.* at ¶ 91, 100. Similar to the Eighth District, the majority in this case seems to implicitly rely on *Morrissey*, albeit without squarely so holding.

{¶79} In Judge Forbes's dissent in *Delvallie*, she likewise eschewed the standard question, but rejected any comparison with parole eligibility. *See id.* at ¶ 140-141 (Forbes, J., dissenting) ("[T]here is no presumption of release on parole in Ohio, thus there is no liberty interest at stake in parole eligibility proceedings. * * * Unlike Ohio's parole eligibility proceedings, the Reagan Tokes Law includes an express presumption of release."). In other words, parole eligibility proceedings invoke a mere "hope or anticipation of freedom," whereas the presumption contained in the Reagan Tokes Law creates an "expectation of release." *Id.* at ¶ 139, 141. For that reason, she concluded that "[t]he *Morrissey* and *Wolff* requirements should serve as guidelines for Reagan Tokes Law proceedings." *Id.* at ¶ 161.

{¶80} The Sixth District recently squarely held that additional term hearings are analogous to parole revocation proceedings for procedural due process purposes. *Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072. The *Stenson* court explained that, like parole revocation proceedings, "an offender is threatened with the deprivation of the liberty he *has*" rather than the deprivation of liberty that he "merely

30

desires." (Emphasis sic.) *Id.* at ¶ 28. Moreover, like parole revocation proceedings, an inmate cannot be deprived of liberty under R.C. 2967.271 based on the DRC's "purely subjective appraisal" of whether the inmate is fit to be released. *Id.* at ¶ 29. Instead, "under R.C. 2967.271(B) and (C), an Ohio offender *must* be released after service of the minimum sentence" unless one of the few exceptions under the statute is met. (Emphasis sic.) *Id.* The *Stenson* court thus held that "[b]ecause the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions, this means that the type of process due in *Morrissey* is due under the additional-term provisions of the Law." *Id.* at ¶ 31.

{¶81} Shortly after *Stenson*, another panel of the Sixth District evaluated the Reagan Tokes Law and the lead opinion determined the *Morrissey* standard does *not* apply to additional term hearings because "what is at issue here is the initial *release* of appellant from confinement, not the revocation of his freedom and placement back into confinement." (Emphasis sic.) *State v. Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, ¶ 136. But Judge Mayle's concurrence (which also was joined by the third judge on the panel) reiterated that *Morrissey* should control, echoing the analysis from *Stenson*. *Id.* at ¶ 156 (Mayle, J., concurring in judgment only). That is, she reasoned, like parole revocation, the inmate's presumptive release date "may not be rebutted based only on a discretionary, 'purely subjective appraisal.' " *Id.* at ¶ 154. Rather, "an Ohio offender *must* be released after service of the minimum sentence unless ODRC makes the purely factual finding" that one of the few exceptions under R.C. 2967.271(B) and (C) are met. (Emphasis sic.) *Id.* at ¶ 155. "In this way, the Reagan Tokes Law functions unlike the highly discretionary decision to release an offender on parole and more like a parole revocation decision." *Id.* at ¶ 156.

31

**{¶82}** To be sure, Judge Mayle recognized that one distinction between additional term hearings and parole revocation hearings is that the offender "has already been released from confinement" during parole revocation hearings, while the offender is merely "hoping to be released from confinement" during additional term hearings. *Id*. at ¶ 157. But I agree with Judge Mayle that this distinction is not dispositive. I see no legally relevant difference between a person who is expecting freedom from confinement and one who is expecting continued freedom from confinement. Both classes of individuals rely on the "implicit promise" that they will be free from confinement so long as they comply with limited conditions. *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593, 33 L.Ed.2d 484. Moreover, the U.S. Supreme Court has recognized that many of the *Morrissey* protections apply when the state seeks to deprive inmates of good-time credit (albeit not all of them). *Eaton* at ¶ 161 (Mayle, J., concurring in judgment only) (explaining that the U.S. Supreme Court recognized in *Wolff*, 418 U.S. at 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935, that inmates are entitled to many of the *Morrissey* protections before the state deprives them of good-time credit).

**{¶83}** The Twelfth District has similarly held that "[t]he hearings conducted by the ODRC under R.C. 2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings * * *." *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17. In that respect, the court cited *Morrissey*. *Id*. That said, the Twelfth District merely analogized rebuttable presumption hearings to parole revocation hearings in considering whether the sentencing court, rather than DRC, must determine whether DRC has rebutted the inmate's presumptive release date. So it did not engage in the full analysis set forth in *Stenson*.

32

**{¶84}** In any case, although the analogy between parole revocation proceedings and rebuttable presumption hearings under the Reagan Tokes Law is not perfect, it represents the best analogy that we have under existing caselaw. Consistent with Judge Mayle's reasoning in *Eaton* and the authorities described above, I would hold that an inmate's liberty interest in his presumptive release date is analogous to a parolee's interest in parole revocation, such that *Morrissey* protections must apply during additional term hearings under the Reagan Tokes Law.

IV.

**{¶85}** Having concluded that inmates sentenced under the Reagan Tokes Law must receive *Morrissey* protections at the additional term hearing, the remaining question becomes whether the Reagan Tokes Law facially satisfies the requirements of procedural due process.

**{¶86}** "Our courts have long recognized that due process requires both notice and an opportunity to be heard." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13. "[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner." *Woods v. Telb*, 89 Ohio St.3d 504, 514, 733 N.E.2d 1103 (2000). "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.' " *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), quoting *Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593, 33 L.Ed.2d 484.

**{¶87}** It doesn't take much analysis of the Reagan Tokes Law to appreciate the lack of procedural due process protections. Let's start with notice—a requirement so foundational to due process that one can scarcely find a case about procedural due

33

process that doesn't mention the notice requirement. Despite the centrality of notice to procedural due process, R.C. 2967.271 provides *no* notice of the hearing to the inmate. Indeed, the statute requires notice to just about everyone *except* the inmate. R.C. 2967.271(E) provides that "[t]he department shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930. of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate." That is, per R.C. 2967.12 and R.C. Chapter 2930, notice must be given to the prosecuting attorney on the inmate's case, the judge or presiding judge of the court in which the inmate was indicted, the victims or their representatives, and certain law enforcement agencies. *See Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 158 (Forbes, J., dissenting) ("Specifically, subsection (E) provides for notice of the Reagan Tokes Law rebuttable presumption hearings to be given to the prosecuting attorney from the inmate's case; the judge or presiding judge of the court in which the inmate was indicted; the victims or victims' representatives of the crimes of which the inmate was convicted; and certain law enforcement agencies. Nothing in subsection (E) provides notice of the rebuttable presumption hearing to the inmate."). The General Assembly specifically excluded the inmate from the list of people required to receive notice, and we can't pretend that choice has no consequence unless we start amending the statute by judicial interpretation. *See State v. Droste*, 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998) ("Under the general rule of statutory construction *expressio unius est exclusio alterius*, the expression of one or more items of a class implies that those not identified are to be excluded."); *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 4 ("We must give effect to the words used, refraining from

inserting or deleting words."); *In re Application of Ohio Edison Co.*, 157 Ohio St.3d 73, 2019-Ohio-2401, 131 N.E.3d 906, ¶ 79 (Kennedy, J. dissenting) ("We may not read words into the statute that the legislature could have written.").

**{¶88}** Some of our sister districts have nevertheless found that R.C. 2967.271 provides notice to the inmate. *See, e.g., State v. Compton*, 2d Dist. Montgomery No. 28912, 2021-Ohio-1513; *State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564; *Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684. Both the Fifth and Twelfth Districts relied on R.C. 2967.271(E) to hold that the Reagan Tokes Law provides notice of the hearing to the inmate, even though that provision omits the inmate from the class of persons entitled to notice. *Ratliff* at ¶ 48 ("Under the Reagan Tokes Law, an inmate is afforded notice and a hearing by R.C. 2967.271(E)."); *Henderson* at ¶ 15-16 (citing R.C. 2967.271(E) to hold that "R.C. 2967.271 provides the opportunity for notice and a hearing"). In that respect, I respectfully submit that they were mistaken. On the other hand, the Second District invoked Ohio Adm.Code 5120-9-08 to conclude that the Reagan Tokes Law supplies notice, *Compton* at ¶ 15-16, even though that provision merely applies to disciplinary proceedings and does not "provide any due process protections to defendants in the rebuttable presumption hearings." *Delvallie* at ¶ 152 (Forbes, J., dissenting).

**{¶89}** To the contrary, the statute provides for notice to some but excludes the inmate. To me, that creates an almost insurmountable problem from a due process standpoint. Imagine being plucked from your home or job, without a word as to why, and then told you would have to defend yourself at a hearing today to determine the fate of your liberty. How do you expect you would fare in such a proceeding? No hearing can be meaningful, consistent with due process norms, without adequate

35

notice. *See Jackson v. Kurtz*, 1st Dist. Hamilton No. C-830520, 1984 Ohio App. LEXIS 11697, *7 (Dec. 5, 1984) (" 'The fundamental requisite of due process of law is the opportunity to be heard,' * * * a right that 'has little reality or worth unless one is informed that the matter is pending.' "), quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), and *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950*). See also Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir.1997) ("Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.' "), quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652, 94 L.Ed. 865.

{¶90} Nor are my fears allayed by considering the hearing requirement in the statute, as R.C. 2967.271 offers no procedural safeguards for the additional term hearing. It provides that the DRC may rebut the inmate's presumptive release date "at a hearing," but includes no provision to ensure that this hearing is meaningful, such as the right to be present, call witnesses and present documentary evidence, or receive a written statement as to the basis for the decision. *See Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 153 (Forbes, J., dissenting) ("R.C. 2967.271(C) does not set forth any procedures for the rebuttable presumption hearing, and most importantly, it does not require that the hearing be meaningful."). The requirement for a meaningful hearing is another foundational principle of procedural due process law, *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, 34 N.E.3d 873, ¶ 42 (" '[T]he basic requirements of procedural due process are notice and an opportunity to be heard.' "), quoting *State v. Hudson*, 2013-Ohio-647, 986 N.E.2d 1128, ¶ 48 (3d Dist.), and yet the Reagan Tokes Law takes no step to satisfy that obligation.

**{¶91}** Highlighting the paucity of due process safeguards, recent decisions from the Eighth and Sixth Districts point to a DRC "policy" (No. 105-PBD-15) as supplying the procedural safeguards absent from the statute. *Delvallie* at ¶ 57; *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 141. I have a few reactions to this. First, if the Reagan Tokes Law could survive constitutional scrutiny on its own, one would not need to resort to extraneous policies like No. 105-PBD-15. Wielding a policy like this to shore up the constitutional footing of the statute betrays broader concerns about the integrity of the statute's foundation.

**{¶92}** Second, DRC policy No. 105-PBD-15 lacks the force of law because it was not promulgated pursuant to R.C. Chapter 119's process for adopting administrative rules. *See State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 137 Ohio St.3d 201, 2013-Ohio-4007, 998 N.E.2d 1074, ¶ 26 ("[B]ureau policy does not have the same effect as law and does not operate to impose a duty upon the bureau to act."); *Oko v. Mohr*, 11th Dist. Ashtabula No. 2011-A-0045, 2012-Ohio-1450, ¶ 16 ("Relator * * * cites to the [DRC's] 'Reception Admission Procedure' as an Administrative Rule. It is not such a rule but instead is a policy issued by the [DRC] pursuant to R.C. 5120.01 * * *."). A nonbinding DRC internal document is irrelevant for the purposes of a facial constitutional challenge to a statute. *See Eaton* at ¶ 165 (Mayle, J., concurring) ("[I]t is inappropriate to depend upon the provisions of an administrative policy, which lacks the force and effect of law, to conclude that a statute fully satisfies all of the mandates of constitutional due process on its face.").

**{¶93}** Finally, the policy falls well short of providing incarcerated individuals with *Morrissey* protections, a problem exacerbated by the Reagan Tokes Law's neglect to include any parameters on the nature of the hearing. In other words, if the Reagan

Tokes Law provided some modicum of protections or even if it directed DRC to craft a policy consistent with due process norms, we wouldn't have a policy akin to the one at hand. At a threshold level, the policy fails to provide the adequate notice and disclosure of the evidence against the inmate. Policy No. 105-PBD-15(E)(2)(d) provides the inmate with at least 30-days notice of the additional term hearing with a major exception—it allows "the Parole Board chair/designee [to] give[] prior approval for notice to be provided less than thirty (30) calendar days prior to that month." That exception could well swallow the rule, enabling DRC to provide notice on the day of the hearing. But even if the notice occurred 30 days before, or six months before, the policy includes no provision ensuring that the inmate receive advance notice of the allegations against him or the evidence the DRC intends to use against him. Any requirement to provide evidence arises only immediately before the hearing, when the hearing officer must share certain relevant information with the inmate. Policy 105-PBD-15(F)(3). Again, how is an inmate supposed to defend himself in such circumstances? The honest answer is that he has no chance. By only requiring DRC to divulge evidence as the inmate is led into the hearing room, the policy strips the inmate of the ability to marshal an effective defense because he lacks prior insight into the nature of the claims against him. *Mullane*, 339 U.S. at 314, 70 S.Ct. 652, 94 L.Ed. 865 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Of course, there is no compelling reason to structure the hearing process in this manner—by design, it stacks the deck overwhelmingly against the inmate.

38

{¶94} In addition, the policy sharply curtails the rights of an inmate at any hearing. In fact, policy No. 105-PBD-15(F)(6) allows the parole board to determine "for good cause shown, that attendance by the incarcerated adult is inappropriate or unwarranted." Although policy No. 105-PBD-15(F)(8) allows the inmate to provide "mitigating information," the policy does not explain whether this information may include witness testimony or documentary evidence, and there does not appear to be any right to cross-examine witnesses. The inmate is not informed of his right to present mitigating information until the hearing convenes, *id.*, begging the question of how could an inmate gather appropriate "mitigating information" without advance notice? To state the question is to answer it. Moreover, the policy limits the potential hearing participants and excludes counsel, 105-PBD-15(F)(5), meaning that even if an inmate were fortunate enough to have a lawyer, the lawyer would not be permitted to attend in order to help marshal "mitigating information."

{¶95} Relatedly, while policy No. 105-PBD-15(F)(12) indicates that the hearing officer "will review the Additional Term Hearing Decision and Minutes * * * with the incarcerated adult," the policy includes no provision ensuring that the inmate receive a written statement of the basis for the decision, or even any explanation.

{¶96} The policy allows an inmate to be hailed before the board without knowing why, without any opportunity to gather information to defend himself or to cross-examine witnesses, and he doesn't even have to be told why he's going to sit in jail longer than he thought he would. Given the structure implemented by the policy, DRC will prevail at every one of these "hearings," with a perfect batting average. All of this offends basic notions of due process that our democracy is founded upon. *Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at fn. 13 (Mayle, J., concurring

in judgment only) ("In any event, given the lead decision's reliance upon ODRC Policy No. 105-PBD-15, I feel compelled to point out that the procedures set forth in that policy fall short of the *Morrissey*-type safeguards that I believe are warranted under the Reagan Tokes Law.  In fact, ODRC Policy No. 105-PBD-15 does not even provide all the protections the U.S. Supreme Court held were necessary before prison authorities could revoke good-time credit in *Wolff*."), citing *Wolff*, 418 U.S. at 563-571, 94 S.Ct. 2963, 41 L.Ed.2d 935.

{¶97}  My colleagues in the majority tell me not to worry, that my parade of horribles is unlikely to materialize, and that we can effectively presume that a constitutional process will unfold.  I wish I could take comfort in that.  But the reason that we have a DRC policy so inimical to due process is precisely because the General Assembly failed to embed due process protections in the Reagan Tokes Law, or at least delegate the matter for appropriate administrative rule making.  A presumption is one thing, but we can't ignore reality.

{¶98} The majority concludes that procedural protections need not be articulated on the face of a statute, but I reject this conclusion for two main reasons. First, I have yet to see (in the existing caselaw assessing the constitutionality of a statutory scheme under procedural due process) a U.S. or Ohio Supreme Court case that says the General Assembly is excused from adding due process protections into a statute because we can just presume that they're there.  Indeed, this flouts the approach normally taken in interpreting statutes that places a premium on the statute's text.  More to the point, Ohio courts have sustained facial procedural due process challenges where the General Assembly omitted procedural safeguards from legislation, thus refuting the notion that the General Assembly has no duty to include

procedural safeguards within legislation. *See, e.g., State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8 (statute that allowed the state to classify dogs as vicious or dangerous animals facially violated procedural due process for providing no preclassification hearing); *CT Ohio Portsmouth, LLC v. Ohio Dept. of Medicaid*, 2020-Ohio-5091, 161 N.E.3d 803, ¶ 49-52 (10th Dist.) (statute that allowed the state to deprive nursing facilities of their right to participate in Ohio's Medicaid Program facially violated procedural due process when it failed to provide detailed procedures for predeprivation proceedings).

{¶99} Second, the legislature has shown, time and again, that it knows how to provide due process protections in the statutes it promulgates (or at least delegate rulemaking authority to an agency to do so). *See Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 162 (Forbes, J., dissenting) ("The Ohio legislature knows how to include due process safeguards in statutes."). My approach thus does not impose any real burden on the General Assembly.

{¶100} One example is R.C. 2971.04, a statute allowing for the termination or transfer of control of a sexually-violent predator. The statute provides the offender with the right to a hearing, right to be present at the hearing, and right to make a statement and present evidence. R.C. 2971.04 also requires the DRC to prepare a risk assessment and report relative to the offender. R.C. 2971.04(A) then grants rulemaking authority to DRC to prescribe additional standards and guidelines to be used in executing R.C. 2971.04.

{¶101} Another example is Ohio's parole revocation statute, which expressly grants rulemaking authority to DRC under R.C. Chapter 119 to promulgate rules for the revocation hearing. *See* R.C. 2967.15(B) ("Except as otherwise provided in this

41

division, prior to the revocation by the adult parole authority of a person's pardon, parole, or other release and prior to the imposition by the parole board or adult parole authority of a new prison term as a postrelease control sanction for a person, the adult parole authority shall grant the person a hearing in accordance with rules adopted by the department of rehabilitation and correction under Chapter 119. of the Revised Code."). Similarly, R.C. 2967.28(E)(5)(d)—a statute that allows the adult parole authority to impose sanctions for postrelease control violations—requires DRC to establish "standards that * * * [e]nsure procedural due process to an alleged violator."

**{¶102}** I believe that it is very dangerous to give the General Assembly a pass from including basic due process protections in the statutes it legislates. The majority here excuses the General Assembly from providing notice to the inmate, but what if the statute didn't include a hearing? By the same logic, should we just imagine that an extra-statutory hearing will occur? I don't think so. *See Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, at ¶ 8. Overactive judicial imaginations should not radically transform and amend defective legislation. Such a regime will also precipitate more litigation, rather than less, and potentially lead to conflicting decisions and standards. All of this could be avoided if the General Assembly simply honored procedural due process in the statutes it passes.

V.

**{¶103}** Finally, I would be remiss if I didn't add a word about as-applied challenges to the Reagan Tokes Law, because the majority in this case and others have concluded that that represents the better forum to probe due process challenges to the statute. *See, e.g., Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, at ¶ 169 (Mayle, J., concurring in judgment only) ("[G]iven that this is a facial challenge to the

42

Law, it cannot be said at this juncture that the Law 'cannot be applied constitutionally in any circumstances.' ").

**{¶104}** I fail to understand how courts will be able to adequately scrutinize proceedings before the DRC when no avenue for appeal exists. 105-PBD-15(F)(15) ("The decision is final and non-appealable."). The answer, I suppose, is that an inmate could file a habeas action, but I have difficulty envisioning how this would constitute a viable path. Without the right to counsel, nearly all such petitions would be pro se. And even if the inmate lucked out and secured a lawyer, how is the lawyer supposed to analyze the due process claim when no record exists of the proceeding, nor any fact-finding or even explanation of the reasons for holding the inmate longer? Absent a record of the proceedings, courts may have no choice but to presume the regularity of the administrative proceedings and defer to the administrative conclusions. *See Arnold v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 11AP-120, 2011-Ohio-4928, ¶ 14 ("Where nothing in the record indicates procedural irregularity, a presumption of regularity attaches to administrative agency proceedings."), citing *State ex rel. Ohio Bldg. Restoration, Inc. v. Indus. Comm. of Ohio*, 64 Ohio St.3d 188, 189, 593 N.E.2d 1388 (1992) ("Given the presumption of regularity that attaches to commission proceedings, the commission's statement that it complied with [the law], absent evidence to the contrary, should be accepted."). The DRC policy does not require any modicum of fact-finding or explanation to be provided to an inmate, and of course, it would not be in DRC's interest to provide such details (because then that might be used by an inmate to challenge its determination). I fear we will just assume away any due process concerns.

{¶105} Moreover, as a practical matter, because as-applied challenges must be decided on a case-by-case basis, even meritorious as-applied challenges will often be rendered moot by the time the courts reach the merits of the constitutional claims if inmates who were deprived of due process at the additional term hearings are released by the time courts finally arrive at the merits of their constitutional challenges. Without any right to counsel to seek a stay or expedited consideration, such inmates may not appreciate the mootness risk that they face.

{¶106} The Eighth District lead opinion in *Delvallie* warned that it would "be devastating" if due process were applied in such a manner that would strike down the Reagan Tokes Law, with chaotic results. *Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, at ¶ 64. But I see a greater threat looming if we (as the court system) kick the proverbial can down the road and wait for as-applied challenges to land on our desks. This does a disservice to the public, DRC, the judicial system, and the inmates themselves.

{¶107} Of course, all of this represents a solvable problem. Modest measures by the General Assembly to ensure procedural due process could moot all of these concerns and eliminate the risk of prolonged litigation, and I would encourage such actions. In the meantime, I respectfully dissent in part and would hold that the notice and hearing provisions in the Reagan Tokes Law violate procedural due process on its face.

Please note:

The court has recorded its entry on the date of the release of this opinion.